**UNITED STATES of America, Appellee,**

v.

**James W. McGRATH, Jon N. English and Raymond D. Masciarelli, Appellants.**

**Nos. 878, 879, Docket 77–1491.**

United States Court of Appeals, Second Circuit.

Argued March 20, 1980.

Decided May 19, 1980.

Gustave J. DiBianco, Asst. U. S. Atty., Syracuse, N. Y. (George H. Lowe, U. S. Atty. for the Northern District of New York, Syracuse, N. Y., of counsel), for appellee.

James P. Shanahan, Syracuse, N. Y., for appellant McGrath.

Charles W. Avery, Auburn, N. Y., for appellant English.

Dante M. Scaccia, Syracuse, N. Y., for appellant Masciarelli.

Before LUMBARD, MULLIGAN and OAKES, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal from judgments of the United States District Court for the Northern District of New York (Munson, *J.*). The three appellants are among a number of defendants who were charged with conducting an illegal gambling operation in a multicount indictment filed on November 18, 1974.[1] Appellants Jon N. English and Raymond D. Masciarelli entered guilty pleas on June 22, 1977 pursuant to a stipulation preserving their right to appeal from pretrial rulings. Appellant James W. McGrath was convicted on May 24, 1977 after a jury trial.

The appellants appeal the denial of several pretrial motions: first, motions to dismiss the indictment on the ground that appellants' right to a speedy trial was violated; second, a motion to suppress evidence on the ground that it was seized pursuant to a faulty search warrant; and third, a motion to suppress wiretap evidence due to excessive sealing delay in violation of 18 U.S.C. § 2518(8)(a). Appellant McGrath also appeals from a ruling at trial permitting the Government to play before the jury a composite tape of recorded conversations. For the reasons given below, we affirm.

## I

In considering appellants' speedy trial claim, it is necessary to begin with a brief description of the various delays which vexed the course of the proceedings below.

Appellants were indicted on November 18, 1974 and arraigned on December 10, 1974. On December 16, the Government filed a Notice of Readiness for Trial, but soon thereafter various defense discovery motions were filed. District Judge Port ordered the Government to prepare a discovery order, but owing to the illness of the Assistant United States Attorney working on the case, this was not done.

On March 13, 1975 an order was filed by Judge Port granting, *inter alia*, defendants' request for the names of the witnesses the Government intended to call. Two weeks later the Government filed a motion to vacate that portion of Judge Port's order, which was denied. On May 8, the Government filed a notice of appeal. This court ultimately reversed Judge Port's disclosure order. *United States v. Cannone*, 528 F.2d 296 (2d Cir. 1975). The appellate process, including the government's petition for rehearing, was not complete until the filing of the order of Judge Port pursuant to the mandate of this court on March 24, 1976. On May 7, 1976, the Government filed materials in response to the modified discovery order. On May 13 a defense motion to suppress wiretap evidence was filed, which was denied on June 29. Appellants concede that the Government was ready for trial as of June 30, 1976.

On November 29, 1976 the jury was called for the trial of Masciarelli and English. The next day a mistrial was declared because members of the jury panel had apparently seen a newspaper article relating to the case. Additional defense suppression motions were made on December 6, 1976 and denied on April 27, 1977. The trial of appellant McGrath had been scheduled for April 27, and the retrial of Masciarelli and English was scheduled to follow on May 11. As a result of a mistrial in the McGrath case, however, his trial did not begin until May 11. McGrath was convicted on May 24, 1977. The retrial of Masciarelli and English began on June 21, 1977 and guilty pleas were entered on June 22.

Appellants' speedy trial claim has three parts. First, appellants contend that the Government failed to retry Masciarelli and English after their November 30, 1976 mistrial within the time limits prescribed by the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.*, and the Northern District Plan for Prompt Disposition of Criminal Cases.[2]

---

1. Count I of the indictment charged ten defendants, including the appellants, with conducting an illegal gambling business involving more than five persons in violation of 18 U.S.C. §§ 2 & 1955. Count II charged conspiracy to commit the same. Count III, which was later severed, did not involve the appellants.

2. The disposition of this case in the United States District Court for the Northern District of New York was governed by three successive

Second, appellants argue that the Government failed to be "ready for trial" within the time limits prescribed by the two previous Northern District Plans. Third, appellants urge that the delays in bringing them to trial violated their constitutional right to a speedy trial under the Sixth Amendment.

Appellants cannot prevail on their retrial argument because neither the Act nor the applicable Plan impose dismissal sanctions for violations of the prescribed time limits. It is therefore unnecessary to consider whether, taking into account the various provisions for exclusion of delay from the retrial calculations, the Government actually transgressed the applicable time limits. *See United States v. DiFrancesco*, 604 F.2d 769, 776 (2d Cir. 1979), cert. granted, —— U.S. ——, 100 S.Ct. 1012, 62 L.Ed.2d 751 (1980). The section of the Act which specifies the sanctions for failure to abide by the time limit provisions, 18 U.S.C. § 3162, is explicitly made applicable only to indictments filed on or after July 1, 1980. 18 U.S.C. § 3163(c) (as amended, August 2, 1979). Similarly, Rule 11(e) of the Plan provides, with certain exceptions not relevant here, that "failure to comply with the time limits prescribed herein shall not require dismissal of the prosecution."

The provisions of the Act and of Plan III which delay the imposition of sanctions were designed to afford the Government and the courts time in which to make the institutional changes necessary to facilitate compliance with the statutory requirements. *See* H.R.Rep. No. 1508, 93d Cong. 2d Sess., 32. This court has uniformly declined to apply sanctions during this phase-in period. *United States v. Dichne*, 612 F.2d 632, 641–42 (2d Cir. 1979); *United States v. DiFrancesco, supra; United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 376–77 (2d Cir. 1979); *United States v. Carini*, 562 F.2d 144, 148 (2d Cir. 1977).

Appellants' contentions with respect to the Government's readiness for trial stand on a somewhat different footing. These contentions exclusively involve the period before July 1, 1976, and thus are not at all covered by the Speedy Trial Act or by Plan III. Rather, these contentions are governed by Rule 4 of Plan I and Rule 5 of Plan II, which both provide that "[i]n all cases the government must be ready for trial within six months from the date of . . . the filing . . . of a formal charge upon which the defendant is to be tried. . . ." Both Plans provide for dismissal of the indictment "[i]f the government is not ready for trial within such time." Although Plan III is not applicable to these claims here, it contains similar provisions in Rules 7 and 11(c). *See, e. g., United States v. New Buffalo Amusement Corp., supra* at 372–74; *United States v. Armedo-Sarmiento*, 545 F.2d 785, 790–91 (2d Cir. 1976); *United States v. Pierro*, 478 F.2d 386, 388–89 (2d Cir. 1973).

■ The court below denied appellants' motion to dismiss on the ground that it was not timely. We need not consider the question of timeliness, because we find that the Government complied with the readiness rule. The Government filed a Notice of Readiness on December 16, 1974, less than one month after the indictment was filed. We disagree with appellants' contention that the Notice was "meaningless" under *United States v. Pollak*, 474 F.2d 828 (2d Cir. 1973). Appellants provide no evidence that the Government was not in fact ready at the time the Notice was filed. Unlike *Pollak*, there was no discovery motion outstanding at the time the Notice was filed. See *United States v. Armedo-Sarmiento, supra* at 791.

■ Even assuming *arguendo* that the Government was not in fact "ready" when

Plans. From the time of indictment until September 28, 1975, the proceedings were governed by the Plan for Achieving Prompt Disposition of Criminal Cases ("Plan I") enacted pursuant to Rule 50(b) of the Federal Rules of Criminal Procedure. From September 29, 1975 to June 30, 1976, the proceedings were governed by the Interim Plan Pursuant to the Provisions of the Speedy Trial Act of 1974 ("Plan II"). After July 1, 1976, the case was governed by the Speedy Trial Act of 1974, 18 U.S.C.A. §§ 3161 *et seq.* (Supp.1980), ("the Act") and the Plan for Prompt Disposition of Criminal Cases ("Plan III").

it filed the Notice, less that 180 days of non-excludable delay [3] elapsed from the indictment on November 18, 1974 to June 30, 1976, the point at which appellants concede the Government was ready for trial.

Appellants argue that 248 days [4] of the period between November 18, 1974 and June 30, 1976 are non-excludable. This assertion is based on mischaracterizations of the status of several important portions of the total delay. First, appellants' contention that the entire period from January 14, 1975 to May 15, 1975 is non-excludable ignores the fact that on March 28, 1975 the Government filed notice of a motion to vacate a portion of Judge Port's discovery order. This motion was pending or under advisement until April 21, 1975. The 24 days involved are therefore excludable under Rule 5(a) of Plan I, providing for the exclusion of periods during which pretrial motions concerning the defendant are pending or *sub judice*. In addition, the exclusion for the Government's interlocutory appeal of Judge Port's order, the validity of which is conceded by appellants, should date from May 8, 1975, the date the Government filed its notice of appeal, not May 15, 1975, as the appellants assert. This brings the total number of excludable days within the January 14, 1975—May 15, 1975 period to 31.

Second, appellants argue that the entire period from March 24, 1976 to June 30, 1976 is non-excludable. Appellants only state in their table that 68 days during that period are non-excludable, but do not classify as either excludable or non-excludable, the 30 additional days included in the period. We have assumed that appellants meant to argue that these 30 days were non-excludable as well in arriving at the figure of 248 non-excludable days through June 30, 1976. On May 13, 1976, however, a defense motion to suppress wiretap evidence was filed, which motion was pending or *sub judice* until its denial on June 29, 1976. The 47 days involved are therefore excludable under Rule 6(a) of Plan II, the counterpart of Rule 5(a) *supra*.

As a result of the above mischaracterizations, 78 of the 248 days which appellants assert are non-excludable are in fact excludable. This leaves only 170 arguably non-excludable days. We need not, therefore, consider the status of the remaining contested periods. Even allowing for a margin of computational error, the Government did not violate the Plans' requirements.

■ We turn now to appellants' Sixth Amendment claims. In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court enunciated four factors to be considered in evaluating a claim of a denial of the right to a speedy trial. These factors are the length of the delay, the reasons for the delay, the defendant's assertion of his right, and the extent of prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2192. Other relevant circumstances may also be considered. These factors, the Court noted, have no "talismanic

---

**3.** The Act and all three Plans provide for exclusion of certain periods from delay calculations. The relevant provision of the Act, which is incorporated into Rule 10(a) of Plan III, is 18 U.S.C. § 3161(h)(1), which provides in part that the following periods of delay shall be excluded:

> Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
>
>   *   *   *   *   *   *
>
> (E) delay resulting from any interlocutory appeal;
> (F) delay resulting from any pretrial motion; from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
>
>   *   *   *   *   *   *

> (J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

The relevant provision of Plan I is Rule 5(a) which provides in part for exclusion of:

> The period of delay while proceedings concerning the defendant are pending, including but not limited to . . . pre-trial motions, interlocutory appeals . . . and the period during which such matters are sub judice.

Rule 6(a) of Plan II is identical to Rule 5(a) of Plan I.

**4.** Appellants' computations err in favor of the Government, claiming only 238 non-excludable days. Our argument is based on a recomputation.

qualities"; none is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533, 92 S.Ct. at 2193.

The delay here was lengthy—some 24 months elapsed from indictment to first trial—but was nevertheless considerably shorter than that of other cases in which no Sixth Amendment violation has been found. *See, e. g., Barker v. Wingo, supra,* 407 U.S. at 533, 92 S.Ct. at 2193 ("well over five years"); *United States v. DiFrancesco, supra* at 776 ("about 30 months"); *United States v. Lane,* 561 F.2d 1075 (2d Cir. 1977) (approximately 58 months).

There were a variety of reasons for the delay, including the Government's interlocutory appeal, defendants' requests for continuances, pretrial motions, the illness of the Assistant United States Attorney, and court congestion. Some delays were clearly due to institutional dysfunction. These delays, while weighing against the Government, do so less heavily than "deliberate delays or delays related to inexcusable inefficiency," *United States v. Companion,* 545 F.2d 308, 312 n.3 (2d Cir. 1976); *see Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. at 2192; *United States v. Roberts,* 515 F.2d 642, 646 (2d Cir. 1975). There is no evidence of bad faith or deliberate delays here.

The Court's third factor weighs against appellants. Rather than "repeatedly and energetically" asserting their rights, as in *United States v. Vispi,* 545 F.2d 328, 334 (2d Cir. 1976), appellants waited until immediately before trial to file their motion to dismiss on speedy trial grounds. Pre-trial motions were filed in a piecemeal manner not strongly indicative of a desire to expedite process.

Finally, appellants can point to no specific and substantiated prejudice arising from the delay. The professions of anxiety and concern, and of loss of witnesses' memory, are ephemeral. Absent specific assertions of such prejudice, it cannot tip the balance here. The delay before trial, while obviously not to be condoned, allowed appellants ample time to examine the largely documentary evidence in this case and to prepare their defense.

We rejected appellants' retrial argument above on the ground that dismissal sanctions are not yet applicable. Even assuming a violation of the provisions of the Act or the applicable District Plan, we find no violation of appellants' constitutional rights. *See United States v. DiFrancesco, supra,* 604 F.2d at 776.

## II

Appellants also challenge the sufficiency of the search warrants issued in this case. They argue that the affidavits used to obtain the search warrants contained information which was stale and not sufficiently specific to support a finding of probable cause. We find that the affidavits were sufficient and that the search warrants were valid.

Search warrants were issued on June 17, 1974 for five locations based on the affidavit of F.B.I. Agent Robert R. Hazelwood. The affidavit recites that telephone conversations were intercepted as late as April 25, 1974 in which appellants McGrath and Masciarelli discussed point information, the balance of layoffs and wagers, and the giving of layoffs or wagers. Appellant English was observed as late as May 13, 1974 at another location to which a number of wagering phone calls were placed.

The affidavit also recites that Agent Hazelwood:

> maintained contact with the two reliable confidential sources whose information resulted in the issuance of the abovementioned wire interception authorizations. The information they provided me was verified by these wire interceptions. . . These two sources, who were proved reliable by these wire interceptions, have indicated to me that this gambling business has been conducted since June 1973, and as of June 11, 1974 is still being conducted.

The currency and specificity of the information forming the basis for the issuance of a search warrant are just two of a variety of factors which must be weighed

in determining whether or not there is probable cause in the individual case. *See Sgro v. United States*, 287 U.S. 206, 211, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932); *United States v. Hyde*, 574 F.2d 856, 865 (5th Cir. 1978); *United States v. DiMuro*, 540 F.2d 503 (1st Cir. 1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977). Also relevant are the reliability of the sources of information, the nature of the alleged illegal activity, the duration of that activity in the location in question, and the nature of the evidence being sought. Here the search warrants were issued for betting slips, notebooks, and other relatively permanent bookmaking paraphernalia which were being used in an extended gambling conspiracy of well over a year's duration. The information in Agent Hazelwood's affidavit, even putting aside the fact that it was brought up to date by information from informants, was considerably fresher than that which has been found sufficient in several recent cases. *See, e. g., United States v. Brinklow*, 560 F.2d 1003 (10th Cir. 1977) (eleven months); *United States v. DiMuro*, 540 F.2d 503, 516 (1st Cir. 1976) (five months held not too long given corroborating evidence).

As for the specificity of the information in the affidavit, the recitations were that Masciarelli and McGrath "were intercepted on numerous occasions exchanging point information, discussing the balance of layoffs and wagers, and giving layoffs of wagers . . . ;" that McGrath and Masciarelli "conducted their transactions over telephone number (607) 724–5301 . . . , and that the telephone is located on the first floor of 229 Chenango Street, Binghamton, New York;" that 38 phone calls were placed to the phone located in Room 4 of the Vestal Motel and that "during these calls point information was exchanged between Thomas A. Gaetani and at least three unknown males and layoffs or wagers were placed by the unknown males and Gaetani. Additionally, balances were discussed." English had been observed in Room 4 on at least four occasions, and those occasions coincided with the interception of gambling communications described in the affidavit.

It borders on frivolity to assert that recitations such as these lack the specificity required by the Fourth Amendment. *See Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Mapp v. Warden*, 531 F.2d 1167, 1171 (2d Cir. 1976). None of the cases relied on by appellants is to the contrary. *Cf. United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); *Nathanson v. United States*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933).

### III

■ Appellants also contend that the district court erred in denying a defense motion to suppress three wiretap tapes. The motion was grounded on an alleged failure by the Government to give satisfactory explanations for delays of three to eight days in sealing the tapes, as required by 18 U.S.C. § 2518(8)(a). See *United States v. Vazquez*, 605 F.2d 1269, 1278 (2d Cir. 1979); *United States v. Sotomayor*, 592 F.2d 1219, 1221 (2d Cir.), cert. denied, 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979). We hold that the short delays were proper under section 2518.

In *United States v. Gigante, supra*, this court held that a "satisfactory explanation" under section 2518(8)(a) is required where sealing is not immediate. The Government concedes that the sealing involved here was not immediate.

Various factors here have been considered in determining whether the Government's explanation is "satisfactory" under section 2518. These include the length of the delay, *United States v. Vazquez, supra; United States v. Scafidi*, 564 F.2d 633, 641 (2d Cir. 1977), cert. denied, 436 U.S. 903, 98 S.Ct. 2231, 56 L.Ed.2d 401 (1978); evidence of tampering, *United States v. Vazquez, supra; United States v. Poeta*, 455 F.2d 117, 122 (2d Cir.), cert. denied, 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972); the time required to duplicate, label, check and prepare the tapes for sealing, *United States v. Ricco*, 421 F.Supp. 401, 408 (S.D.N.Y.1976),

aff'd 566 F.2d 433 (2d Cir. 1977), cert. denied, 436 U.S. 926, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978); and whether the defendants were prejudiced by the delay. *United States v. Scafidi, supra.*

Needless to say, section 2518 was not intended to bar use of wiretaps only when the defendant can show prejudice or present evidence of tampering or other governmental bad faith. The statute imposes an affirmative responsibility on the Government. *See United States v. Vazquez, supra.* Here, however, given that the delay was relatively short and included one weekend, and that no evidence of prejudice or foul play was presented, we accept as satisfactory the Government's explanation that it was "reasonably necessary" to transport the tapes from Binghamton to Albany for duplication and processing, and thence to Auburn for sealing.

### IV

■ Appellant McGrath argues that it was error for the trial judge to permit the Government to play composite tapes of intercepted telephone calls for the jury. Although the entire tapes were received in evidence, a single recording composed of portions of a number of separately recorded conversations was played.

Here McGrath waived his right to appeal by failing to object properly to the composite tape below. The trial transcript clearly shows that although McGrath made a request, which was properly denied, that the tapes not be played at all, he never objected to the composite tape as such or requested that the tapes be played in their entirety. McGrath failed entirely to argue, let alone demonstrate, that the composite tape contained misleading portions, invited erroneous inferences, or created a false or misleading impression. Under these circumstances, we will not hear McGrath to object at this time. *See generally United States v. Rubin,* 609 F.2d 51, 61–63 (2d Cir. 1979), cert. granted, —— U.S. ——, 100 S.Ct. 1645, 64 L.Ed.2d 234 (1980); *see also United States v. Maultasch,* 596 F.2d 19, 24 (2d Cir. 1979); *United States v. Indiviglio,* 352

F.2d 276 (2d Cir. 1965) (en banc), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966).