**UNITED STATES of America**

v.

**Mike RODRIGUEZ, Jr., William Donlan, Anthony Vessichio, Jose Cordero, Fernando Diosa, Maria Saida Bermudez, Leonel Gomez, Michael A. Rodriguez, Sr., Anthony Lanziero, and Israel Arce.**

**No. CR B 84–61.**

United States District Court, ·
D. Connecticut.

July 3, 1985.

Holly Fitzsimmons, Linda K. Lager, James T. Cowdery, Bridgeport, Conn., for Government.

Hugh F. Keefe, New Haven, Conn., J. Daniel Sagarin, Milford, Conn., Charles Hanken, Bridgeport, Conn., Morris I. Olmer, William Dow, III, New Haven, Conn., Frank Antollino, East Haven, Conn., Rich-

ings in terms of credentials review" would result from the use of the Register. Mundy Dep.,

Plaintiffs' Exh. 170.

ard Reeve, Richard N. Palmer, Hartford, Conn., Ira Grudberg, Jonathan Einhorn, New Haven, Conn., for defendants.

## RULING ON MOTION TO REOPEN AND RECONSIDER

EGINTON, District Judge.

Defendants William Donlan, Anthony Vessichio, Michael A. Rodriguez, Sr., Mike Rodriguez, Jr., and Fernando Diosa are charged with conspiracy to possess cocaine with the intent to distribute. The court granted the defendants' motion to suppress all intercepted wire and oral communications and evidence derived from such communications, in a ruling filed on June 20, 1985 ("Ruling"), 612 F.Supp. 718.

The government now moves the court to reopen and reconsider its suppression ruling. The court has RECONSIDERED its ruling, and ADHERES to its earlier decision, for the reasons set forth below. The court has examined the government's offer of proof, and concludes that the evidence which the government seeks to introduce would not alter the legal bases of the court's suppression ruling. Accordingly, the government's motion for additional evidentiary hearings is DENIED.

The wiretap evidence of this case was suppressed because the court found that the government violated the sealing and delivery provisions of 18 U.S.C. 2518(8)(a). The court based its decision on several findings of fact and conclusions of law. The government now moves to introduce evidence concerning two factual issues: (1) the supervising Assistant United States Attorney's extensive preparation for another trial during the period of the sealing delay, and (2) the security procedures used to protect the tapes against tampering.

### The Government's Preparatioin for Another Trial

The supervising Assistant United States Attorney ("AUSA"), Holly Fitzsimmons, has submitted an affidavit describing all her activities during the two week period of delay, from September 5 to September 14,

1984. The court will address the relevant portions of the affidavit.

The affidavit states that the wiretap "ended unexpectedly on September 4, 1984." The court finds this to be factually incorrect. The order authorizing the wiretap provided for an interception of only 30 days. Government Exhibit ("Gov.Ex.") 1A. As the wiretap began on August 6, 1984, it was due to end no later than September 5. The September 4th ending therefore could not have been "unexpected."

The affidavit also describes two things which Fitzsimmons "thought needed to be done before we could appear" for the judicial sealing of the tapes. Fitzsimmons affidavit ("AUSA aff.") par. 13. These two items were writing a final report to the issuing judge, and arranging for a qualified lay translator to transcribe back-up copies of the tapes.

The wiretap statute, 18 U.S.C. 2518(8)(a), does not require any reports to be filed before tapes may be judicially sealed. Instead, it requires that the sealing take place "[i]mmediately upon the expiration of the period of the [wiretap] order...." Additionally, the court notes that the original tapes were not needed for the translator's transcriptions. Ruling at 19-20.

█ The court does not find that the statute justifies a delay in sealing in order to complete a judicial report or arrange for a translator.

█ The principal reason for the government's failure to seal the tapes from September 5 to September 14, according to the affidavit, was that Fitzsimmons' time was taken in preparing for a multiple defendant criminal trial which commenced on September 17.

The court notes that there has been no claim that the September 17 date was set on short notice. And as earlier discussed, the September 4 end of the wiretap was expected by the government. The scheduling difficulties which arose could not have come as a surprise.

The rationale of the court's suppression ruling would not be affected by proof of Fitzsimmons' extensive preparation for her September 17 trial. The suppression ruling noted that a second AUSA, Linda Lager, finally arranged for and attended the judicial sealing. The court concluded that "Lager's substitution points out that there was never a cause for delay." Ruling at 39.

Fitzsimmons' affidavit describes Lager's scheduling conflicts during the delay period. Yet the affidavit also states that an AUSA from another office handled an arraignment on the case, when it was necessary. AUSA aff. par. 18. The court notes the testimony of the government's sole witness, that it is acceptable practice for a Drug Enforcement Administration ("DEA") agent to turn to any AUSA if the supervising AUSA on a matter, such as Fitzsimmons, is not available. Transcript of January 31, 1984 ("Tr. II") 193–94.

In assessing Fitzsimmons' affidavit, the court relies on the cautionary dicta of *United States v. Vazquez*, 605 F.2d 1269 (2d Cir.1979), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979).

> However, in law as in life, today's satisfactory explanation may very well be tomorrow's lame excuse. As the federal and state case law in this area grows, the failure to foresee and, where possible, prevent sealing delays becomes less justifiable, as law enforcement officials must be expected to learn from their own experiences and those of others. The wiretap statute imposes a duty on the judiciary as well as on the prosecutor.

*Id.* at 1280.

The court adheres to its initial conclusion that Lager, or another AUSA, could have substituted for Fitzsimmons and accompanied the DEA agent at the judicial sealing, if Fitzsimmons' schedule did not permit her to attend.

Fitzsimmons' affidavit notwithstanding, the circumstances of this case show that the delay was caused by the government's failure to act with the diligence required by *Vazquez*, 605 F.2d at 1279. Fitzsimmons'

trial preparation cannot excuse the 14 day delay. *See United States v. Angelini*, 565 F.2d 469, 472 (7th Cir.1977) ("a satisfactory explanation is one in which the Government shows that it acted with dispatch and all reasonable diligence to meet the sealing requirement").

### Security of the Tapes

■ The government's explanation for its delay is not the only factor to be addressed when considering a claim made under section 2518. Under *United States v. McGrath*, 622 F.2d 36, 42 (2d Cir.1980), the court must also examine the length of the delay, evidence of tampering, the time required to prepare the tapes for sealing, and whether the defendants were prejudiced by the delay.

The suppression decision concluded that the 2 week delay at issue was so serious that it required a scrupulous examination of the government's explanation. Ruling at 40, *see also* Ruling at 36–37; *Vazquez*, 605 F.2d at 1278 (a sealing after 1 or 2 weeks is not "immediate," as required by the wiretap statute). Nor did the court find that the delay was mitigated by time needed to prepare the tapes, for no duplication or administrative processing was required. Ruling at 40.

Significantly, the court found that the sealing delay did not prejudice the accused in their defense. The court also found that the immediate heat sealing and other precautions taken by DEA agent Barry P. Abbott virtually ensured the tapes that he sealed against tampering. Ruling at 42.

The court noted, however, that Abbott sealed only about 5 of the 26 tapes at issue. The rest were in the custody of Agent Jane Giandana. The government presented no evidence during the suppression hearings as to the procedures followed by Giandana. The court therefore could not find that the 21 tapes in Giandana's custody were "adequately protected against tampering." Ruling at 42.

Agent Giandana has now submitted an affidavit which indicates that her security

procedures offered the same protection as those of Agent Abbott's. Nonetheless, even if the court were to find that all the tapes were virtually ensured against tampering, the rationale of its suppression decision would not change.

The Second Circuit has consistently held that "section 2518 was not intended to bar use of wiretaps only when the defendant can show prejudice or present evidence of tampering or other governmental bad faith." *McGrath*, 622 F.2d at 43, *see also United States v. Gigante*, 538 F.2d 502, 505 (2d Cir.1976) (to demand a showing of tampering "would vitiate the Congressional purpose in requiring judicial supervision of the sealing process").

In addition, the Second Circuit has repeatedly ruled that "unilateral 'sealing' of the tapes by the investigators themselves, outside the presence of the court ... [does] not substitute for the presence of a 'seal *provided for by this subsection*' " [emphasis in original] [citations omitted]. *Vazquez*, 605 F.2d at 1278 n. 20. *See also Gigante*, 538 F.2d at 506 (government sealing procedure was inadequate because it was not *"provided for by this subsection,"* as 18 U.S.C. 2518(8)(a) requires [emphasis in original] ).

This court must balance the security of the tapes against the explanation offered for the government's delay. *McGrath*, 622 F.2d at 42–43. Having done so, the court adheres to its initial ruling, and concludes that the absence of tampering or prejudice to the defendants does not outweigh the government's lack of diligence, and the length of the delay. Ruling at 42.