**UNITED STATES of America,
Appellant,**

v.

**Michael RODRIGUEZ, Michael Rodriguez, Jr., William Donlan, Anthony Vessichio, and Fernando Diosa, Defendants-Appellees.**

No. 335, Docket 85–1254.

United States Court of Appeals,
Second Circuit.

Argued Oct. 22, 1985.

Decided Feb. 25, 1986.

James T. Cowdery, Asst. U.S. Atty., Bridgeport, Conn. (Alan H. Nevas, U.S. Atty. for Dist. of Connecticut, Holly B. Fitzsimmons, Asst. U.S. Atty., Bridgeport, Conn., on brief), for appellant.

Ira B. Grudberg, New Haven, Conn. (Alice S. Miskimin, New Haven, Conn., Frank Antollino, East Haven, Conn., Charles Hanken, Bridgeport, Conn., Hugh F. Keefe, New Haven, Conn., William F. Dow, III, New Haven, Conn., on brief), for defendants-appellees.

Before OAKES, NEWMAN and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

The United States of America appeals, pursuant to 18 U.S.C. § 3731 (1982), from an order of the United States District Court for the District of Connecticut, Warren W. Eginton, *Judge*, suppressing certain tape recordings made by agents of the Drug Enforcement Agency ("DEA") pursuant to court-authorized electronic surveillance, and from an order denying the government's motion for reconsideration of the suppression order. The court ordered the suppression of the evidence on the ground that the government had failed to comply with the requirement of 18 U.S.C. § 2518(8)(a) (1982) that such recordings be presented to the authorizing judge for sealing immediately upon expiration of the period of authorized surveillance. On appeal, the government argues that its reason for failing to comply with the statute was sufficient, in the absence of any prejudice to the defendants, to excuse its failure to comply. For the reasons below we vacate the orders appealed from and remand for reconsideration.

## I. BACKGROUND

The pertinent events are not in substantial dispute. On August 6, 1984, the government obtained an order from the district court, Ellen Bree Burns, *Judge*, authorizing a wiretap on the telephone of one Betty Guevara at her residence in New Haven, Connecticut, for a period of 30 days. The wiretap was maintained until September 5, 1984, the day following the arrest of Guevara and another on narcotics charges.

Guevara, defendant Michael Rodriguez, Jr., and two others were promptly indicted on charges of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846 (1982). Superseding indictments followed, charging all of the defendants before us with distributing and conspiring to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1982), and using a telephone to facilitate the distribution of cocaine, in violation of 21 U.S.C. § 843(b) (1982). The government gave notice that evidence obtained through the wiretap on Guevara's telephone would be used at trial.

Defendants moved to suppress the wiretap evidence, arguing, *inter alia*, that the statutory requirements regarding judicial sealing of the tapes had been violated. It is undisputed that although the electronic surveillance ended on September 5, and § 2518(8)(a) requires that the recordings made pursuant to authorized electronic surveillance be presented to the court that issued the authorization "[i]mmediately" upon expiration of the period covered by the order, the government did not present the tapes for judicial sealing until September 19.

At the evidentiary hearing on defendants' motions, the government presented the testimony of DEA agent Barry Abbott as to the procedures he used in recording, handling, and maintaining the tapes prior to their presentation to the court. During the course of the wiretap, the taping was done on a 24-hour basis, with agents working three eight-hour shifts. Two reel-to-

reel tape recorders operated simultaneously; one was deemed to produce "original" tapes and the other was deemed to produce duplicates. Abbott testified that at the beginning of each day (around midnight), the previous day's tapes were rewound and removed from the machines, and new tapes were inserted. At the DEA listening station, the "original" tape was placed in a box and the box sealed with an evidence seal; the sealed box was then put in an envelope and the envelope heat-sealed. The heat-sealed original tapes were kept in Abbott's custody until they were secured in the DEA evidence vault in Hartford, Connecticut. The original tapes remained intact in the DEA evidence vault until they were presented to Judge Burns for judicial sealing on September 19.

Abbott himself had handled only five of the 26 tapes recorded during the surveillance; the remaining 21 had been handled by DEA agent Jane Giandana. In its initial response to defendants' motions, the government did not present any evidence from Giandana as to the procedures she followed.

On the basis of Abbott's testimony, the government argued that there had been no prejudice to the defendants from the delay in presentation of the tapes to Judge Burns for sealing. Little, however, was offered to explain the delay. Abbott testified that he had been busy on several days with arrests and court proceedings and that it was his understanding that arrangements for presentation of the tapes for judicial sealing would be made by the United States Attorney's office. He testified that the Assistant United States Attorney ("AUSA") handling the case, Holly B. Fitzsimmons, had been engaged in preparing another case for trial and that eventually the presentation to Judge Burns had been made by another AUSA, Linda Lager. In its memorandum of law, the government noted that Judge Burns had been away from chambers on September 13 and 14.

In an opinion reported at 612 F.Supp. 718 (D.Conn.1985), Judge Eginton ruled that the government had not complied with the statutory requirement that presentation for judicial sealing be made "immediately" and that, on the evidence before him, the explanation for the delay was inadequate. The court noted that although Abbott had testified that Fitzsimmons had been preparing for another trial during the period of delay, the government had provided no description of her involvement with the other matter such as to suggest that she was unable to see to the presentation of the tapes for judicial sealing. Further, the court found that the fact that another AUSA eventually presented the tapes to Judge Burns indicated that the delay was avoidable regardless of Fitzsimmons's own schedule.

Judge Eginton also found that in the absence of any testimony by Giandana, who had been responsible for 21 of the 26 tapes, the evidence was insufficient to satisfy the court that most of the tapes had been adequately protected against tampering. The court concluded that, while the delay in the judicial sealing of the tapes did not prejudice defendants in their defense, such evidence as there was to suggest the probable absence of tampering and the lack of any prejudice to the defendants did "not outweigh the government's lack of diligence, and the length of the delay." Accordingly, the court suppressed the tapes.

The government moved for reconsideration of the suppression order and attempted to fill the gaps in its initial presentation. It submitted an affidavit from Giandana describing the procedures she had used in handling the tapes prior to delivering them to the DEA custodian, and an affidavit from Fitzsimmons describing the burdens of her schedule and why they had prevented her from carrying out what she understood to be tasks required prior to the presentation of the tapes for judicial sealing.

According to Giandana's affidavit, her procedures paralleled those of Abbott. She stated that she had sealed each of the original tapes upon removing it from the machine and had kept all of them locked in her desk until she delivered them to the DEA custodian. She stated that the seals

were not altered or removed prior to their delivery to the custodian.

Fitzsimmons stated in her affidavit that it had been her understanding that the presentation of the tapes to Judge Burns for judicial sealing had to be accompanied by a detailed final report on the wiretap. In addition, since the recorded conversations were in Spanish and no DEA translator was available, Fitzsimmons believed it necessary to submit, with the presentation of the tapes, a detailed request for authorization to disclose the contents of the tapes to a non-law-enforcement translator. Fitzsimmons stated, in essence, that these matters required some days to execute and that her time, including weekends, had been consumed by other matters described below.

Fitzsimmons was lead attorney in Connecticut for the New England Organized Crime Drug Enforcement Task Force ("OC-DETF"). Prior to August 1984, Fitzsimmons, Lager, and one other AUSA had been assigned to OCDETF; in mid-August, the third AUSA resigned on short notice, leaving Fitzsimmons and Lager to handle the cases previously assigned to all three. The departing AUSA was not replaced until mid-October. At the beginning of September, Fitzsimmons was principally engaged in preparation for trial in *United States v. Zimmerli*, a 20-odd-defendant case involving a narcotics conspiracy alleged to have spanned a period from 1976 to 1984. *Zimmerli* had a firm trial date of September 17. The DEA investigation in *Zimmerli* had begun some six years before the first arrests in 1983, and Fitzsimmons was required to examine a voluminous file in order to prepare the government's witnesses and documentary evidence and to extract and duplicate possible Jencks Act material. Further, as the trial date approached, several defendants agreed to plead guilty and to cooperate with the government, thereby increasing the pretrial witness preparation tasks. Responsibility for preparation of this case was that of Fitzsimmons alone; no other AUSA was assigned to assist her. In addition, Fitzsimmons had other responsibilities for pre-

sentation of matters to a soon-to-expire grand jury, application for search warrants in connection with the present case, negotiations for plea bargains in *Zimmerli* and other cases, and other matters.

Fitzsimmons stated that she had had to ask other AUSAs to handle other matters for her such as a sentencing in an unrelated case and the arraignment of one of the persons originally indicted in connection with the present prosecution. She sought the assistance of Lager in the present matter, hoping to present the tapes during the week of September 10, but Judge Burns was away on September 13 and 14, attending the Second Circuit's Judicial Conference, and Lager was out of the state interviewing witnesses with respect to another multi-defendant case that Lager was scheduled to try in October. When Lager returned to the office on September 18, Fitzsimmons asked her to make the appointment with Judge Burns for the judicial sealing of the tapes in the present case. She provided Lager with a draft final report and the details of the tentative arrangements made for translation of the tapes. On September 19, Fitzsimmons commenced the trial of the *Zimmerli* case, which proceeded continuously until a verdict was reached on October 18.

Without holding a further evidentiary hearing or soliciting a response from defendants to the government's motion for reconsideration, Judge Eginton refused to disturb the suppression order. In an opinion reported at 616 F.Supp. 272 (D.Conn. 1985), he found that even if he were to be persuaded, in light of Giandana's description of the DEA sealing procedures she followed, that all of the tapes were virtually ensured against tampering, he would not vacate the suppression order because the government's explanation for the delay in presentation of the tapes to Judge Burns remained inadequate. The court found that AUSAs other than Fitzsimmons could have made the presentation, and that there was no requirement in the statute that either the report or the translation authori-

zation request that Fitzsimmons believed necessary accompany the presentation.

This appeal followed.

## II. DISCUSSION

Section 2518(8)(a) of 18 U.S.C. provides, in pertinent part, as follows:

Immediately upon the expiration of the period of the order [for a wiretap], or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions.... The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire or oral communication or evidence derived therefrom ....

The government contends that, in the absence of any prejudice to the defendants from the delay in judicial sealing, the district court erred in concluding that the government's explanation for its delay in obtaining the judicial seal provided for by this section was not "satisfactory." Defendants contend that the district court's ruling should not be set aside unless it was "clearly erroneous," and that in any event the ruling was clearly correct. We conclude that the district court's ruling is subject to a full review by this Court and, on the basis of our review, we conclude that the government's explanation, if credited, is, in the circumstances, "satisfactory" within the meaning of the statute.

### A. The Standard of Review

The principle that factual findings of the district court will not be set aside unless clearly erroneous is found in Rule 52(a) of the Federal Rules of Civil Procedure. Although no comparable provision appears in the Federal Rules of Criminal Procedure, a "clearly erroneous" test has been applied by appellate courts in criminal cases in reviewing certain types of fact findings by the district court. The use of this standard in criminal cases has, however, generally been limited to " 'basic, primary, or historical facts: [*i.e.,*] facts "in the sense of a recital of external events and the credibility of their narrators" ', [as contrasted with] 'so-called mixed questions of fact and law, which require the application of a legal standard to the historical fact determinations.' " *United States v. Curcio,* 694 F.2d 14, 21 (2d Cir.1982) (quoting *Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963)).

■ In the present case, the matters of basic, primary, or historical fact are matters such as the date on which authorization for the wiretap expired, the date on which presentation was made for judicial sealing, the methods used by DEA agents to secure the tapes, the activities of the AUSAs on certain dates, and the like. These facts do not appear to be in dispute and the findings of the district court are not challenged. What is in dispute is whether, if the presentation for sealing was not "immediate" within the meaning of § 2518(8)(a), the government's explanation of its delay in presentation was "satisfactory" within the meaning of the statute. This question is not a matter of basic or historical fact but rather is a question of the interpretation of the statute in order to determine the proper legal standard and a question of the application of that standard to the historical facts. The district court's rulings on such questions are subject to a full review on appeal. *See United States v. Curcio,* 694 F.2d at 22.

### B. The Adequacy of the Government's Explanation for the Delay in Judicial Sealing of the Tapes

There is no question that, in light of our prior interpretations of § 2518(8)(a), the government's presentation of the tapes for judicial sealing 14 days after expiration of the authorization order was not "immediate" within the meaning of that section. In *United States v. Vasquez,* 605 F.2d 1269, 1278 (2d Cir.), *cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), for example, we suggested that any presentation made more than two days after the end of the wiretap could not be considered immediate. This view is consistent with

our rulings in other cases that presentations after delays of less than a week were not immediate. *See, e.g., United States v. McGrath,* 622 F.2d 36, 42–43 (2d Cir.1980) (3–8 days); *United States v. Fury,* 554 F.2d 522, 533 (2d Cir.) (6 days), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977); *United States v. Scafidi,* 564 F.2d 633, 641 (2d Cir.1977) (7 days), *cert. denied,* 436 U.S. 903, 98 S.Ct. 2231, 56 L.Ed.2d 401 (1978); *see also United States v. Vasquez,* 605 F.2d at 1278 (7–13 days); *United States v. Poeta,* 455 F.2d 117, 122 (2d Cir.) (13 days), *cert. denied,* 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972); *United States v. Massino,* 784 F.2d 153 (2d Cir.1986) (15 days).

▆▆▆ When, as here, the government's presentation for judicial sealing has not been immediate, the defendants' motion for suppression of the tapes must be granted unless the government's explanation for the delay in presentation is satisfactory. *United States v. Gigante,* 538 F.2d 502 (2d Cir.1976); *see United States v. McGrath,* 622 F.2d at 42; *United States v. Vasquez,* 605 F.2d at 1278. Although one purpose of the strictures imposed by the statute is to ensure the accuracy of the recordings, *see United States v. Gigante,* 538 F.2d at 505, and the possibility of tampering may affect the acceptability of the government's explanation, the fact that there is no evidence that the tapes have been tampered with or that the delay caused the defendants any other prejudice does not relieve the government of its burden to present a satisfactory explanation, *id.* at 505–06 (tapes must be suppressed where no explanation offered for delays of 8–12 months); *United States v. McGrath,* 622 F.2d at 43 ("section 2518 was not intended to bar use of wiretaps only when the defendant can show prejudice or present evidence of tampering or other governmental bad faith").

When the government has offered an explanation for the delay, the factors considered in assessing the acceptability of the explanation have included the length of the delay, *see United States v. Massino,* 784 F.2d at 158; *United States v. McGrath,*

622 F.2d at 42–43; *United States v. Vasquez,* 605 F.2d at 1278–80; *United States v. Scafidi,* 564 F.2d at 641; the amount of time needed to prepare the tapes for sealing, *see United States v. McGrath,* 622 F.2d at 42–43; *United States v. Vasquez,* 605 F.2d at 1279; the diligence of law enforcement personnel in performing the necessary pre-presentment tasks, *see id.* at 1279; the foreseeability and urgency of circumstances diverting the attention and energies of those responsible for the presentation of the tapes to other matters, *see United States v. Massino,* 784 F.2d at 158; evidence of any tampering with the tapes or of any other prejudice to the defendants, *see United States v. McGrath,* 622 F.2d at 42–43; *United States v. Poeta,* 455 F.2d at 122; and any evidence of bad faith on the part of law enforcement agencies, such as "any intent to evade statutory sealing requirements or to gain any tactical advantage," *see United States v. Scafidi,* 564 F.2d at 641; *United States v. Vasquez,* 605 F.2d at 1279.

In most cases when (1) the government has advanced reasons for the delay, such as the need to perform administrative tasks relating to the tapes prior to sealing, (2) there is no basis for inferring that the government sought by means of the delay to gain a tactical advantage over the defendant or that it had any other improper motive, and (3) there has been no showing that there has been tampering with the tapes or that the defendant has suffered any other prejudice as a result of the delay, the government's explanation has been accepted as satisfactory. This has been so even when the delay occurred because those conducting the wiretap have, without having the benefit of judicial interpretation of the statute, misconceived the requirements of the statute. Thus, in *United States v. Poeta,* 455 F.2d 117, the presentation for judicial sealing was delayed for 13 days because the prosecutor incorrectly believed, on the basis of a state statutory provision, that the presentation had to be made to the judge who had issued the wiretap authorization, and that judge was away on vacation. We accepted the government's

explanation as satisfactory in the absence of any suggestion of bad faith by the government or prejudice to the defendants. *Id.* at 122; *see also United States v. Fury,* 554 F.2d at 533 (explanation that six-day delay occurred because issuing judge was on vacation accepted as satisfactory in absence of bad faith or prejudice to defendants). Once the caselaw has established that a given factor is not a valid reason to delay presentation of the tapes for sealing, however, an explanation that the delay was caused by that factor is likely to be rejected as unsatisfactory. *See United States v. Vasquez,* 605 F.2d at 1280 n. 25 (government's statement that issuing judge was unavailable for several days deemed irrelevant in light of *Poeta* and *Fury*).

■ In the present case, the explanation offered by the government, if accepted as genuine, falls just within the boundaries of acceptability set by our precedents. While the government's reliance on the absence of Judge Burns to explain part of the delay is unacceptable, we conclude that the remainder of the government's explanation is not insufficient as a matter of law to satisfy the statute.

■ The 14-day length of the delay, while "among the longest we have been willing to tolerate," *see United States v. Massino,* 784 F.2d at 158 (15 days), is not itself sufficient to warrant rejection of the proffered explanation. According to Fitzsimmons's affidavit, the bulk of the delay was caused in part by the fact that she believed that certain reports, somewhat time consuming to prepare, were required to accompany the tapes on their presentation for sealing. We agree with the district court that there was no such requirement; but the order authorizing the wiretap did require Fitzsimmons to submit progress reports every five days, and if her belief that the final report had to accompany the sealing presentation was genuine, that explanation should not, in this case, be discounted.

■ The perceived requirements apparently were difficult for Fitzsimmons to meet, given the amount of time that she was required to spend in court and before the grand jury, the pressures created by the unexpected departure of one of only three AUSAs assigned to OCDETF, the heaviness of the workload of that office in general and Fitzsimmons in particular, and the immediacy of certain other deadlines. Nor does it appear that Fitzsimmons's failure to get another AUSA to handle the presentation of the tapes earlier than was done was unreasonable in the circumstances. When Fitzsimmons got Lager to substitute for her in presenting the tapes for sealing, she provided Lager with a draft of the report she thought necessary. We see no basis for inferring that an AUSA other than Fitzsimmons would have had sufficient familiarity with the surveillance to prepare the report earlier than Fitzsimmons could have done and hence no basis for attributing to Fitzsimmons any reasonable belief that she could get another AUSA to handle the presentation of the tapes prior to Fitzsimmons's own preparation of at least a draft report. In all, we do not see that Fitzsimmons's conduct as described in her affidavit bespoke any bad faith or lack of diligence.

Finally, there is no suggestion in the record that there was any opportunity for anyone to tamper with the tapes prior to their judicial sealing. Giandana's affidavit described procedures that paralleled those of Abbott. Although Judge Eginton did not actually rule on the adequacy of Giandana's presentation, he had ruled that the tapes handled by Abbott were "virtually ensured ... against tampering," and that the delay in sealing these tapes did not prejudice the defendants.

In sum, we are unable to agree with the district court that the explanation offered by the government, with the inclusion of its supplemental submission in support of its motion for reconsideration, was insufficient as a matter of law to meet the requirement of § 2518(8)(a) of a "satisfactory" explanation for the delay in the judicial sealing of the tapes. We therefore vacate the suppression order and the order denying reconsideration of that order, and we remand to

the district court for such further proceedings as may be appropriate. This will afford the defendants an opportunity to challenge, if they wish, the factual representations in the supplemental affidavits; if those representations are not challenged, or, if challenged, are credited, the motion to suppress should be denied.

In ruling the government's explanation in this case not unsatisfactory as a matter of law, we reiterate our admonition in *United States v. Vasquez:*

> [I]n law, as in life, today's satisfactory explanation may very well be tomorrow's lame excuse. As the federal and state case law in this area grows, the failure to foresee and, where possible, prevent sealing delays becomes less justifiable, as law enforcement officials must be expected to learn from their own experiences and those of others.

605 F.2d at 1280. We trust that the government is now adequately informed that presentation of surveillance tapes for judicial sealing should not await the preparation of a final progress report, any more than it should await the availability of the authorizing judge. The statute requires the presentation immediately upon expiration of the period of the order. Delay of that presentation for unnecessary tasks should be eliminated.

## CONCLUSION

The orders of the district court are vacated, and the matter is remanded for further proceedings not inconsistent with this opinion.