UNITED STATES of America, Appellee,

v.

Thomas PITERA, Defendant–Appellant.

No. 1456, Docket 92–1681.

United States Court of Appeals,
Second Circuit.

Argued April 30, 1993.

Decided Sept. 22, 1993.

David A. Ruhnke, West Orange, NJ (Ruhnke & Barrett, on the brief), for defendant-appellant.

David W. Shapiro, Sp. Asst. U.S. Atty., Brooklyn, NY (Mary Jo White, U.S. Atty., Susan Corkery, Mark S. Cohen, Elisa L. Liang, Asst. U.S. Attys., on the brief), for appellee.

Before: NEWMAN, Chief Judge, MAHONEY, Circuit Judge, and EGINTON,* District Judge.

JON O. NEWMAN, Chief Judge:

This appeal primarily challenges the appropriateness of a District Judge's participation in a narcotics trial shortly after delivering a speech to a group of drug enforce-

---

* Honorable Warren W. Eginton of the United States District Court for the District of Connecticut, sitting by designation.

ment officials. Thomas Pitera appeals from the November 6, 1992, judgment of the District Court for the Eastern District of New York (Reena Raggi, Judge) convicting him of various offenses including racketeering, in violation of 18 U.S.C. § 1962(c) (1988); supervising a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848(a), (c) (1988); murder in furtherance of a CCE, in violation of 21 U.S.C. § 848(e)(1)(A) (1988); and several narcotics and firearms offenses.

Pitera contends (1) that Judge Raggi should have recused herself, (2) that certain surveillance tapes should have been suppressed for lack of prompt sealing, (3) that seized evidence should have been suppressed because of false and incomplete warrant applications, (4) that the identity of a confidential informant should have been disclosed, (5) that the jury was improperly instructed concerning informant testimony, and (6) that a juror who expressed doubts about his impartiality should have been excused. We affirm.

The evidence, which need not be detailed for consideration of Pitera's claims, abundantly established that Pitera was the ringleader of a criminal group that engaged in murder, drugs trafficking, kidnapping, armed robbery, and various other crimes. Several of the murders were personally committed by Pitera, who dismembered the victims' bodies and buried them in a Staten Island bird sanctuary.

Following a jury verdict of guilty as to most counts of the indictment and the jury's decision not to recommend the death penalty, the District Court sentenced Pitera to seven terms of life imprisonment, four terms of twenty years' imprisonment, and five terms of ten years' imprisonment. Three of the life terms, two of the twenty-year terms, and one ten-year term run consecutively. A fine of $250,000 was also imposed.

### Discussion

1. *Recusal.* Appellant moved for the District Judge's recusal on the basis of a videotaped lecture she had given to members of the New York/New Jersey region of the Organized Crime Drug Enforcement Task Force ("the Task Force"). The lecture was given seven months before Pitera's trial, while the case was assigned to Judge Raggi. It included advice to the assembled agents and prosecutors about steps they might take to increase the prospects for conviction in narcotics cases and urged them to take such steps. The lecture made no reference to Pitera's case. Judge Raggi denied the recusal motion in a carefully considered oral opinion.

In challenging the Judge's ruling, appellant focuses his attention on the particulars of the Judge's remarks to the Task Force. Though recognizing that a judge is not disqualified simply by the fact of speaking to law enforcement officials about trial tactics, he contends that the remarks in this instance were so pointed in conveying not only techniques for obtaining convictions but also the desirability of such outcomes that the Judge's impartiality "might reasonably be questioned," 28 U.S.C. § 455(a) (1988).

"[T]he substantive standard for recusal is whether a reasonable person, *knowing all the facts,* would conclude that the court's impartiality might reasonably be questioned." *Apple v. Jewish Hospital and Medical Center,* 829 F.2d 326, 333 (2d Cir. 1987) (emphasis added). In this case, "all the facts" must include two significant matters that provide important context for the challenged aspects of the Judge's remarks. First, the lecture to the Task Force included several emphatic criticisms of prosecutors that would lead a reasonable person not to question, but to have confidence in the Judge's impartiality. For example, the Judge admonished the prosecutors to take seriously their "*Brady* [*v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)]· and *Giglio* [*v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)]" obligations and also referred to occasions when informants are "under controlled." Second, the lecture to the Task Force was followed two months later by her participation in a Practicing Law Institute program for criminal defense lawyers and the following year by her participation in the annual retreat of the New York Council of Defense Lawyers. The record discloses that

the Judge commendably lectures to a variety of trial practice seminars.

We are satisfied that a reasonable person knowing all the facts would not think that the Judge's impartiality might reasonably be questioned. *See United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992).

■ 2. *Suppression of surveillance tapes.* Appellant contends that tapes of electronic surveillance of an automobile should have been suppressed because of the Government's delay in sealing the tapes. Recordings of wiretaps and other intercepts must be sealed "[i]mmediately upon the expiration of the period of the [authorizing] order...." 18 U.S.C. § 2518(8)(a) (1988). In this case, the order expired on a Thursday, and the tapes were sealed the following Tuesday. When a tape has not been sealed "immediately," the Government must provide "satisfactory explanation" for the delay, and not merely prove the absence of tampering. *See United States v. Ojeda Rios,* 495 U.S. 257, 263–65, 110 S.Ct. 1845, 1849–51, 109 L.Ed.2d 224 (1990). Where the delay is between two and five days, we have indicated that the Government should submit with the tapes an *in camera* explanation of the delay. *See United States v. Massino,* 784 F.2d 153, 158 (2d Cir.1986).

■ Whether or not weekend days are counted, the delay in this case is within the two-to five-day range. Though the Government did not attempt to explain the delay until Pitera made a motion to suppress, we agree with the District Court that the explanation is satisfactory. The Government explained that it had miscalculated the expiration date and had not thought it necessary to contact a judge at home in order to seal the tapes over the weekend. We have found satisfactory similar explanations that are based on mistake, *see e.g., United States v. Rodriguez,* 786 F.2d 472, 477–78 (2d Cir. 1986), and difficulty in sealing tapes over a weekend, *see, e.g., United States v. Gallo,* 863 F.2d 185, 193 (2d Cir.1988), *cert. denied,* 489 U.S. 1083, 109 S.Ct. 1539, 103 L.Ed.2d 843 (1989); *United States v. McGrath,* 622 F.2d 36, 43 (2d Cir.1980). Because the delay here was relatively short and there was no suggestion of bad faith, deliberate disregard of

the statute, or tampering, the tapes need not have been suppressed. *See United States v. Maldonado–Rivera,* 922 F.2d 934, 950 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991).

■ 3. *Suppression of seized evidence.* Appellant contends that evidence seized during a search of his apartment should have been suppressed because the agent preparing the warrant affidavit deliberately misrepresented or omitted material facts. The affidavit states two bases for probable cause: that an informant had reported that Pitera currently stored guns and other equipment related to his criminal activity in the apartment, and that another informant had reported that Pitera's wife had died of a drug overdose in the apartment. After the Government conceded that Pitera's wife had not died in the apartment, Pitera requested a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). At the hearing, the agent testified that the informant who stated Pitera "currently" stored guns had not spoken to Pitera in many months, and that the informant had obtained this information from a third person, whom he named.

Appellant's *Franks* challenge fails because, even if the false information is disregarded and the omitted information is included, the affidavit would be sufficient, under the totality of the circumstances, to support a finding of probable cause. *See Illinois v. Gates,* 462 U.S. 213, 241–46, 103 S.Ct. 2317, 2333–37, 76 L.Ed.2d 527 (1983). The reference to the death of Pitera's wife was insignificant since the statement that evidence of crimes would be found in the apartment sufficed. The omission of evidence concerning the informant's named source of information was also insignificant since the affidavit stated that the information from the informants was partially based on their conversations with other "members of the PITERA CREW who are intimately familiar, through personal participation and observation, with the crimes committed by PITERA and his associates." *See Rivera v. United States,* 928 F.2d 592, 604 (2d Cir.1991).

4. *Nondisclosure of informant's identity.* During the trial, Pitera sought disclosure of the identity of an informant identified in the surveillance applications only as "Source A" or "CI–2." Pitera apparently believes that this informant is Frank Gangi, a prosecution witness, and that disclosure of this fact would have enabled him to argue that Government informants committed crimes while working for the prosecution. The Government represented that the informant was not Gangi, and the District Court declined to order disclosure of the informant's name, either to the defendant or *in camera.* We do not believe the District Court erred in accepting the Government's representation. Since the informant was not Gangi, Pitera failed to make a sufficient showing that disclosure of the informant's name would be "relevant and essential to the presentation of his case on the merits," *Cullen v. Margiotta,* 811 F.2d 698, 716 (2d Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987), and disclosure was not required.

5. *Jury instruction.* Appellant complains that the jury charge did not include the specific language he had requested concerning the caution to be exercised in assessing testimony of an informant. However, the jury was adequately instructed that it should scrutinize informant testimony with particular care and was also told that an informant might lie in an effort to obtain favorable treatment.

6. *Retaining a juror.* On the final day of jury deliberations, the District Court conducted a *voir dire* of a juror whose car had been stolen two days before. *See United States v. Aiello,* 771 F.2d 621, 629 (2d Cir. 1985). Though the juror initially expressed doubts about his ability to remain impartial as a result of the episode, he ultimately assured the Court that he had "no doubt" about his ability to serve and that he would be "fair." Both defense counsel and the prosecutor initially requested that the juror be excused, but defense counsel later shifted his position, responding "Yes" when the Judge asked, "[Y]ou don't think the juror should be excused, but that there should be a mistrial?"

The District Judge conducted a careful inquiry of the juror on separate occasions during the day and acted within her discretion, *see United States v. Casamento,* 887 F.2d 1141, 1187 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990), in concluding that the juror should not be excused.

The judgment of the District Court is affirmed.