**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Fred Jules ABRAHAM et al.,
Defendants-Appellees.**

No. 75–2477.

United States Court of Appeals,
Sixth Circuit.

Argued June 9, 1976.

Decided Sept. 8, 1976.

Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., Victor D. Stone, Washington, D. C., Alfred G. Kaufman, Jr., Detroit Strike Force, Detroit, Mich., for plaintiff-appellant.

Daggs and Berg, Robert E. Berg, Jr., Detroit, Mich., Charles Burke, Livonia, Mich., for defendants-appellees.

Ernest Levin, Detroit, Mich., for defendant-appellee.

F. Randall Karfonta, Steven Reifman, Detroit, Mich., for amicus curiae.

Before EDWARDS and LIVELY, Circuit Judges, and McALLISTER, Senior Circuit Judge.

LIVELY, Circuit Judge.

This case is concerned with the provisions of the federal wiretap statute, 18 U.S.C. §§ 2510–2520 (1970), which require that recordings made pursuant to an intercept or-

der be sealed.[1] We are informed by the parties that the sealing requirement has been interpreted differently by several of the judges of the United States District Court for the Eastern District of Michigan. One interpretation of the statute was challenged in this court in *United States v. Lucido*, 517 F.2d 1 (6th Cir. 1975), but that case was decided on other grounds.

In the present case, to avoid a jeopardy problem, the government moved for a ruling in advance of trial on the adequacy of the sealing procedure which had been followed. The District Judge conducted a hearing at which detailed testimony was received concerning the handling of recordings which had been made of telephone conversations of the defendants-appellees. The district court concluded that the sealing requirements of § 2518(8)(a) had not been met and entered an order suppressing and excluding "the contents of all intercepted wire communications and evidence derived therefrom, . . . ." The government has appealed, and we reverse.

■ The defendants objected to the pretrial hearing at the request of the government at a time when they had not made a motion to suppress the recordings. The district court held that the defendants were not prejudiced by the pretrial offer of proof on the issue and overruled the objections. The District Judge has discretion to hear or decline to hear motions in advance of trial and we find no abuse of discretion in the procedure followed here.

■ The defendants made a motion in this court to dismiss the government's appeal on the ground that there is no authority for the government to appeal "from an advisory ruling on evidence prior to trial." It is clear that the government is not attempting to appeal from an "advisory ruling." The orders to which the notice of appeal is directed finally suppressed and excluded from the trial the primary evidence upon which the prosecution was based. The attorney for the government certified to the District Judge that the appeal was not taken for purposes of delay and that the evidence suppressed constituted substantial proof of a fact material to the prosecution. Though it speaks in terms of an appeal from an order granting a motion to suppress evidence, we conclude that 18 U.S.C. § 3731 (1971)[2] permits an appeal by the United States under the circumstances of this case. The motion to dismiss the appeal is denied.

The evidence in the present case disclosed that orders authorizing the wire intercept of communications from designated telephones in the Detroit area were entered by a Judge of the district court on October 26, 1972 and November 21, 1972. On the day of the termination of interception under the

---

1. 18 U.S.C. § 2518(8)(a) (1970) provides for sealing as follows:

 (8)(a) The contents of any wire or oral communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire or oral communication under this subsection shall be done in such way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders. They shall not be destroyed except upon an order of the issuing or denying judge and in any event shall be kept for ten years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517 of this

 chapter for investigations. The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire or oral communication or evidence derived therefrom under subsection (3) of section 2517.

2. 18 U.S.C. § 3731 (1971) provides in part:

 An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

first order and the day following termination pursuant to the second order an attorney for the Detroit Strike Force of the Department of Justice filed motions to seal the tapes. Without requiring that the recordings be brought to him or viewing them at the FBI office where they were then in custody, the District Judge entered orders that the "electronic surveillance tapes be sealed and be placed in the custody of the Federal Bureau of Investigation, Detroit, Michigan office, within the personal control of Special Agent NORMAN F. SIMON . . . ."

Agent Simon testified that a room was maintained in the FBI office where tape recordings made pursuant to court authorized interceptions were stored. This was a restricted area and only he and two other supervisor-agents had keys to the room. He testified that the tapes in the present case were delivered to him along with the court order to seal them and that the tapes were placed in separate drawers in two metal file cabinets in the restricted room. A distinctive masking tape marked in red letters, "FBI Evidence," was placed over the openings at the front of each drawer. A copy of the pertinent court order was affixed to each drawer containing recordings. Later, a second unmarked tape was placed over the "evidence" tape to further secure the drawers during the relocation of the FBI offices.

At the conclusion of the hearing the court made a finding that "the actual integrity of the tape" was secure. However, suppression was ordered on the basis of the court's conclusion that "Congress literally intended that this [the sealing] be done personally by the judge." In clarifying this ruling the court stated that there had been no sealing within the meaning of the statute in this case, stating:

> It's a two-fold ruling: One, that the tapes must be presented to him personally and, secondly, that the seal must be placed on in the presence and under the direction of the judge. It doesn't mean he has to put it on the tape but he should be there watching it . . . . .

We find nothing in the language of § 2518(8)(a) which requires the presence of the judge as the sealing of the recordings takes place. The evidence disclosed that the government attorney advised the District Judge that the original tapes of interception were available for inspection at the time he presented the motions for orders sealing them. This was a literal compliance with the statutory requirement that the recordings be made available to the judge who had issued the intercept order. Here the Judge declined to inspect the tapes, and we find no statutory command that he do so. The recordings had been made by FBI agents who had complete control over the tapes and the recording apparatus during the entire period of the interceptions. If any alterations, erasures or other tampering with the tapes occurred during that time, it is highly unlikely that an inspection by a judge would disclose it. It was the duty of the Judge under the statute to preserve the recordings as possible evidence. This was done by ordering that the surveillance tapes be sealed and placed in the custody of Agent Simon. The statute directs that the recordings be sealed under the judge's direction, not in his presence.

The statutory provisions related to wiretaps are contained in Title III of the Omnibus Crime Control and Safe Streets Act of 1968. Nowhere in the extensive legislative history of Title III do we find an indication of Congressional intent that intercept recordings be sealed in the actual presence of the authorizing judge. *See* 1968 *U.S.Code Cong. and Adm.News,* pp. 2177–2197. Senate Report No. 1097 indicates that the purpose of § 2518(8)(a) is two-fold: to assure the admissibility of recordings in evidence and to require that they be treated as confidential court records. 1968 *U.S.Code Cong. and Adm.News,* p. 2193. In *United States v. Giordano,* 416 U.S. 505, 515, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 (1974), the Supreme Court referred to § 2518(8) as providing for "official control of the custody of any recordings or tapes produced by the interceptions carried out pursuant to the order, . . . . ."

There is probably no foolproof method of sealing tape recordings to prevent tampering. The integrity of recordings after completion of an interception is best preserved by designation of a reliable custodian. The requirement of sealing in § 2518(8)(a) appears to be related to the purpose of maintaining confidentiality of the recordings. *But see United States v. Sklaroff,* 506 F.2d 837 (5th Cir.), *cert. denied,* 423 U.S. 874, 96 S.Ct. 142, 46 L.Ed.2d 105 (1975). This is clearly the purpose of § 2518(8)(b),[3] which relates to applications and orders authorizing interceptions. *United States v. Cantor,* 470 F.2d 890, 893 (3d Cir. 1972). Courts have traditionally withdrawn particular records from public scrutiny by ordering them sealed to preserve confidentiality. The presence of the judge at the actual sealing would offer no additional guarantee that confidentiality would be maintained.

The appellees rely principally upon the decision of the Court of Appeals of New York in *People v. Nicoletti,* 34 N.Y.2d 249, 356 N.Y.S.2d 855, 313 N.E.2d 336 (1974), construing a state statute almost identical to § 2518(8)(a). In that case the court held that there had not been substantial compliance with the sealing requirements. In fact the tape recordings had not been sealed at all and there had been no designation by the court of a custodian. From the court's opinion it does not appear that there was any attempt to comply with the statutory requirements. In the present case, by contrast, immediately after the conclusion of surveillance the attorney made the recordings available and requested a court order directing that they be sealed and designating a custodian. Recognizing fully the necessity for strict compliance with the procedural safeguards mandated by Congress with respect to court-authorized interceptions of private communications, we find no failure to comply in the present case. *Compare United States v. Donovan,* 513 F.2d

337 (6th Cir. 1975), *cert. granted,* 424 U.S. 907, 96 S.Ct. 1100, 47 L.Ed.2d 310 (1976).

**[4]** The appellees contend that, even if sealing in the presence of the judge is not required, nevertheless there was a failure to comply with the statute in the present case. Pointing to the fact that the word "seal" is used both as a verb and a noun in § 2518(8)(a), they argue that a seal of some kind must be affixed to the tapes, or its absence satisfactorily explained. When the evidence tape and masking tape were affixed to the front of the file cabinet drawers in such a way as to cover the openings by which they slide in and out of the cabinet the tapes functioned as seals. The statute does not prescribe a particular type of seal nor has any court authoritatively done so. A wax seal might have looked more impressive than a tape seal, but it would hardly be more efficacious for preserving either the confidentiality or the integrity of the contents of the drawers.

 Since several judges of the Eastern District of Michigan have construed § 2518(8)(a) differently, and similar questions are likely to arise in other districts, we are setting forth minimum requirements to be observed hereafter for the sealing and custody of recordings made pursuant to intercept authorizations in this Circuit.

1. The tape recordings from each authorization shall be placed in one or more cartons and securely closed with evidence tape or a similar adhesive tape. Each carton shall be clearly identified with a separate letter designation. The tape on each carton shall be initialed by the attorney who obtains the sealing order and the number of reels of tape in each carton shall be shown. The date of the order shall be placed on the tape.

2. The custodian shall maintain a separate inventory of recordings delivered

---

**3.** 18 U.S.C. § 2518(8)(b) (1970) provides:

(b) Applications made and orders granted under this chapter shall be sealed by the judge. Custody of the applications and orders shall be wherever the judge directs. Such applications and orders shall be dis-

closed only upon a showing of good cause before a judge of competent jurisdiction and shall not be destroyed except on order of the issuing or denying judge, and in any event shall be kept for ten years.

to him under each court order. This inventory will show by letter designation and date each carton of recordings delivered to him and the number of separate reels of tape contained in each carton.

3. The sealed cartons of recordings shall be stored in a limited access area under the control of the court-designated custodian. This shall be a separate room used exclusively for the storage of such recordings.* A log shall be maintained showing the name of each person entering the storage area together with the time of entering and leaving.

4. Within the limited storage area the cartons containing recordings shall be kept in locked metal file cabinets or similar locked metal containers.

5. The recordings so stored shall only be taken from the locked containers and removed from the restricted storage area pursuant to court order. When an order is issued for such removal, the custodian shall produce the sealed cartons and inventories of the contents of each in the court room or chambers of the judge issuing the order.

 In the present case the record indicates that the two layers of tape have not been removed from the file cabinets. It is not clear whether the recordings were sealed in any other way before being placed in the drawers. We have held that the use of tape on the front of the drawers constituted a satisfactory compliance with the sealing requirement. The unsealing of these recordings should be performed in the court room or chambers of the judge who orders it. In the present case, and in all pending cases in which sealing has consisted of taping closed the drawers of a filing cabinet, the recordings will be produced in court or chambers in the sealed file cabinets and removed only after unsealing has taken place in the presence of the ordering judge.

* If a separate room is not available, a district court may designate by local rule an area of

The judgment of the district court is vacated and the case is remanded for further proceedings. No costs allowed.

some secure space under the control of the custodian as the storage location.