[No. D017961. Fourth Dist., Div. One. Apr. 22, 1993.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
EARL FRANK WESTBROOK, Real Party in Interest.

## COUNSEL

Edwin L. Miller, Jr., District Attorney, Evan G. Miller, Deputy District Attorney, Daniel E. Lungren, Attorney General, and John A. Gordnier, Assistant Attorney General, for Petitioner.

No appearance for Respondent.

Eugene G. Iredale for Real Party in Interest.

## OPINION

**TODD, J.**—The People seek a writ of mandate after the court granted Earl Frank Westbrook's (Westbrook) motion to suppress tape recordings of certain telephone conversations. Westbrook argued, inter alia, there was no timely order regarding sealing and the tapes had never been delivered to the judge as purportedly required by Penal Code[1] section 629.14. The court granted the motion based on the government's failure to comply with the section's purported requirement that sealing be conducted under the supervision of the judge. Because we conclude a timely oral sealing order was in effect and the court's participation in the physical sealing of the tapes was not required by statute, we grant the petition.

### BACKGROUND

On January 15, 1992, the Honorable Raymond Edwards, Jr., on application of the San Diego District Attorney's office issued an order authorizing the interception of wire communications of telephone numbers belonging to Westbrook and another defendant. On February 13, 1992, Judge Edwards signed an extension of the authorization. On February 26, 1992, the wiretap concluded. The wiretap authorization was issued in connection with an

---

[1] All statutory references are to the Penal Code unless otherwise specified.

ongoing investigation of a purported conspiracy to manufacture and sell methamphetamine.

Westbrook and 10 codefendants were charged with having conspired to manufacture and market in excess of 100 pounds of methamphetamine. Additionally, Westbrook was charged with 23 counts of having transported, possessed, manufactured or sold a controlled substance.

Westbrook filed eight motions regarding the electronic surveillance including a section 1538.5 motion to suppress evidence for violation of section 629.14. Westbrook relied upon section 629.14's provisions that: 1) immediately upon the expiration of the authorization order or any extensions, the recordings are to be made available to the issuing judge and sealed under his or her directions; and 2) the presence of a seal provided for in the section or a satisfactory explanation for its absence is a prerequisite for the use or disclosure of the contents of any wire communication. Westbrook contended the tapes were never delivered to the judge, a judicial seal was never applied, no timely order regarding sealing was obtained and there was no satisfactory explanation for a six-month delay in obtaining an order regarding sealing.

In opposition the prosecution argued, inter alia, timely oral sealing orders were in effect and followed. In support of its opposition the prosecution submitted declarations by Evan Miller (Miller), the deputy district attorney assigned to work with the narcotics investigation involving Westbrook, and Michael Hook (Hook), an El Cajon Police Department detective assigned to the investigation.

Hook in pertinent part made the following statements in his declaration. He was the case agent for the investigation in question. During the court-authorized wiretap he was in charge of handling and impounding all tape recordings. Each telephone line was equipped with two tape machines that simultaneously made four tape recordings. The first tape machine recorded a "District Attorney" and a "Court" copy while the second tape machine recorded a "Defense" and a "Working" copy. At the end of each shift the agents working that shift removed the tapes from the machines and placed them into individual evidence bags. The evidence bag containing the court copy was sealed and placed into a file cabinet in the wire room. Each day Hook removed the sealed evidence bag containing the court copy from the wire room. He maintained custody of the sealed bag until he transferred it to the Drug Enforcement Agency (DEA) nondrug evidence custodian (evidence custodian) who placed the sealed bag in the nondrug evidence vault.

Miller in pertinent part made the following statements in his declaration. He had been assigned to work with Hook in the investigation involving

Westbrook. In November 1991 Hook and Miller concluded conventional investigative techniques had failed and decided to seek authorization for a court-ordered wiretap. In December 1991 and January 1992, before the authorization of any wiretap, Miller met several times with Judge Edwards, the designated "wiretap" judge for the superior court. During one of those meetings, Miller discussed with Judge Edwards the requirement the recordings be "made available to the judge" and be kept "where the judge orders." Miller discussed with Judge Edwards a proposed procedure for sealing and maintaining the tapes, the procedure described in Hook's declaration. Miller "indicated" to the judge that the tapes could be sealed and stored in that manner or "sealed and maintained in any other place" the judge "deemed appropriate." Miller advised Judge Edwards he thought it would be "more secure and less complicated" to keep the sealed tapes in the custody of Hook and the DEA evidence custodian. The judge agreed. Miller informed Hook of the judge's decision and reviewed the agreed to procedure to ensure Hook knew the court copies "had to be sealed and maintained for the court and could not be used for any other purpose."

Miller additionally declared that at the conclusion of the wiretap operation he again discussed the "made available" and "custody" requirements of section 629.14 with Judge Edwards. Because the tapes were already sealed and in the custody of the evidence custodian, Miller suggested to Judge Edwards that he designate the custodian as the person who should keep the recordings for 10 years as required by section 629.14. Judge Edwards agreed. Miller was to prepare a written order for the judge's signature. He failed to do so until August 25, 1992, at which time Judge Edwards signed an order that pursuant to section 629.14 the tape recordings were "ordered sealed until further written order" and that the recordings were to be kept in the custody of the DEA evidence custodian for 10 years.

The court granted the section 1538.5 motion stating "[t]he wiretap recordings, and all evidence derived therefrom, must be suppressed pursuant to Penal Code Section 629.14." The court's basis for granting the motion was its belief Judge Edwards had delegated his nondelegable sealing function.

Before the petition for writ of mandate was filed in this court, the parties stipulated to augment the record for purposes of appellate review. The augmentation included a declaration by Judge Edwards.

Judge Edwards in pertinent part made the following statements in his declaration. Before authorizing the wiretap, he met with Miller several times in December 1991 and January 1992 regarding the wiretap affidavit. During at least one of those meetings, he discussed with Miller the procedure to be

used to record, seal, and safely store the court's copy of the wiretap tape recordings. Miller and the judge discussed whether the DEA or the clerk of the court would maintain possession and custody of the sealed tape recordings. The judge was of the view, and Miller agreed, it would be more secure and less complicated to keep the court's copy of the sealed tape recordings in the custody of Hook and the DEA evidence custodian. The court's copy of the tape recording was to be immediately sealed and maintained for the court and could not be used for any other purpose. To thwart any claim the tape recordings had been compromised, Miller agreed to the court's tape recording being "removed from the tape machine, tab removed, sealed and put into evidence." On at least one occasion during the interception of wire communications, Miller and Hook assured the judge "that as the tape recordings were being made, they were removed from the machine, tabs removed, sealed and stored as [they] had earlier discussed."

Judge Edwards additionally declared that on February 27, 1992, the day after the wiretap terminated, he discussed with Miller the "made available" and "custody" requirement of section 629.14 with respect to the court's copy of the tape recordings. Miller reassured him the recordings had remained sealed and in the custody of the DEA evidence custodian. The judge did not want the tape recordings delivered to him because he did not want either himself or court personnel to be responsible for their storage. To avoid any need for the judge or court personnel to be witnesses in the matter, the judge also did not want either himself or court personnel to be part of the chain of custody. For those reasons, and because the tapes had been sealed from the outset, he ordered that the DEA evidence custodian be designated the person responsible for the storage of the sealed tape recordings in accordance with section 629.14. Miller indicated he would prepare an order for Judge Edwards's signature. On August 25, 1992, Miller presented the order which was signed that day.

These proceedings ensued. We issued an order to show cause and held oral argument.

DISCUSSION

I

Section 629.14 in pertinent part provides:

"Immediately upon the expiration of the period of the order, or extensions thereof, the recordings shall be made available to the judge issuing the order and sealed under his or her directions. . . . The presence of the seal

provided for by this section, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire communication or evidence derived therefrom under Section 629.28."

The prosecution argues, inter alia, that the court erred in granting the motion to suppress because a timely oral sealing was in effect and followed in this case. The prosecution further argues there is no requirement for a sealing order under section 629.14 to be in writing or for the tapes to actually be delivered or presented to the court for sealing. Westbrook on the other hand argues the court correctly suppressed the tapes for violation of the sealing requirements. According to Westbrook the tapes were never "made available" to the judge within the meaning of the statute, no judicial seal was ever applied, a judicial order was never sought until six months after the termination of the wiretap and the order that was eventually obtained was insufficient.

Three questions are presented for our consideration:

(1)   Can a sealing order be oral rather than written?

(2)   Must the tapes be presented to the judge for sealing in his or her presence?

(3)   Assuming an oral order may be sufficient and presentation is not required, were the oral "orders" in this case sufficient to meet the purpose and requirements of section 629.14?

As discussed below, we conclude a sealing order may be oral, the tapes need not be presented to the judge for sealing in his or her presence and the procedure used here met the requirements and purposes of the section. Any delay in seeking a written order or deficiency in that order is therefore irrelevant.

## II

■    Section 629.14 does not contain a specific requirement for a written sealing order. It simply requires that the recordings be "made available" to the judge "issuing the order and sealed under his or her direction." The parties have cited no California cases addressing this issue. Nor have we located any such cases. The pertinent language of section 629.14 is however virtually identical to that contained in 18 United States Code section 2518(8)(a), the federal law governing the court sealing requirement. We therefore turn to federal law for guidance.

In *United States* v. *Gigante* (2d Cir. 1976) 538 F.2d 502 the government obtained a series of orders authorizing electronic surveillance. The trial judge suppressed certain of the tapes because, inter alia, there had been no formal sealing order or record of the judicial sealing proceedings with respect to those tapes. (*Id.* at p. 505.) The Second Circuit disagreed.

"While we agree that it might be better practice for the issuing judge to sign a formal order directing the sealing and custody of the tapes, and to maintain a record of that proceeding, such procedures are not required by § 2518(8)(a). Rather the subsection states merely that the judge shall provide directions as to sealing and custody. Because Judge Gurfein apparently gave such instructions as to the products of the first wiretap, we cannot conclude that their suppression was mandated." (538 F.2d at p. 507. See also *United States* v. *Diana* (4th Cir. 1979) 605 F.2d 1307, 1311, fn. 2, 1315.)

The reasoning of the federal cases apply equally to the California statute. A written order is not required by section 629.14. Nor does the absence of such order compromise the purpose of the sealing requirement "to ensure the reliability and integrity of evidence obtained by means of electronic surveillance." (*United States* v. *Ojeda Rios* (1990) 495 U.S. 257, 263 [109 L.Ed.2d 224, 234-235, 110 S.Ct. 1845] (*Ojeda Rios*).) If an oral order is challenged it simply requires the use of declarations by the issuing judge as was done in this case. The cumbersome nature of the procedure, however, makes it clear the better practice is for the trial court to issue a formal written order. Nevertheless, such order is not statutorily mandated.

### III

We turn next to whether or not the statute requires the tapes actually be delivered to the court for sealing in the judge's presence. Once again the parties have not cited nor have we located any California cases on point. Relying on *United States* v. *Abraham* (6th Cir. 1976) 541 F.2d 624 (*Abraham*) the prosecution argues there is no requirement the tapes actually be delivered to the judge for sealing in his or her presence. Rather, it contends the "made available" requirement of the statute is met by the tapes being available to the judge should he or she want them produced. Westbrook on the other hand contends the statute requires the tapes be "made available" in the sense of being brought into the presence of the judge so as to permit him or her to order the seal applied and verify the presence of the judicial seal required by statute.

In *Abraham* an attorney for the Department of Justice filed motions to seal tapes immediately upon termination of the authorization orders. The district

judge who had authorized the wiretaps ordered the tapes sealed and placed in the custody of the local Federal Bureau of Investigation (FBI) office. The judge entered the order without requiring the tapes to be brought to him or viewing them in the FBI office where they were then in custody. (*Abraham*, *supra*, 541 F.2d at pp. 626-627.) Upon a government motion for a ruling on the adequacy of the sealing procedure, the trial judge ordered suppression because it concluded Congress intended the tapes be presented to the judge personally and the seal applied in the presence and under the direction of the judge. (*Id.* at p. 627.) The Sixth Circuit disagreed.

"We find nothing in the language of § 2518(8)(a) which requires the presence of the judge as the sealing of the recordings takes place. The evidence disclosed that the government attorney advised the District Judge that the original tapes of interception were available for inspection at the time he presented the motions for orders sealing them. This was a literal compliance with the statutory requirement that the recordings be made available to the judge who had issued the intercept order. Here the Judge declined to inspect the tapes, and we find no statutory command that he do so. . . . The statute directs that the recordings be sealed under the judge's direction, not in his presence." (541 F.2d at p. 627.) The court further stated that the sealing requirement appeared to be related to maintaining confidentiality of the records and discussed that the judge's presence at the actual sealing would not further that purpose. (*Abraham*, *supra*, 541 F.2d at p. 628.)

Westbrook contends that federal law is in overwhelming agreement that the words "made available" are synonymous with *presenting or delivering* the tapes to the judge. The dissent agrees that multiple cases reflect an understanding that tapes must be physically presented to the authorizing judge for sealing. Although the cases cited by the dissent and Westbrook discuss delivery or presentation of the tapes, not one of them involved facts in which the judge issuing a sealing order directed how the tapes were to be sealed but elected not to have the tapes delivered into his or her presence for the actual sealing. Rather, the cases generally involved situations in which the tapes had been presented or delivered to the judge and the reviewing court discussed the procedure followed. (See *U.S.* v. *Pedroni* (9th Cir. 1992) 958 F.2d 262, 264-266 [tapes delivered to judge for sealing 14 days after surveillance termination with issue being whether there was a satisfactory explanation for delay]; *United States* v. *Rodriguez* (2d Cir. 1986) 786 F.2d 472, 476-478 [tapes presented to the judge after 14-day delay with issue being the adequacy of the government's explanation for delay]; *United States* v. *Cohen* (5th Cir. 1976) 530 F.2d 43, disapproved on another point in *Ojeda Rios*, *supra*, 495 U.S. at p. 265, fn. 5 [109 L.Ed.2d at pp. 235-236] [5-week delay in delivering tapes]; *State* v. *Chiarizio* (1986) 8 Conn.App. 673,

691-693 [514 A.2d 370, 381-382] [tapes delivered to secretary of judicial wiretap panel who adopted seal earlier applied by police agent with issue being whether procedures followed complied with sealing requirements of statute]; *U.S.* v. *Vastola* (3d Cir. 1990) 915 F.2d 865, 866-867 [45-day delay in delivering tapes].)

The only case cited by Westbrook that addresses whether presentation to the judge for sealing is required is *People* v. *Nicoletti* (1974) 34 N.Y.2d 249 [356 N.Y.S.2d 855, 313 N.E.2d 336]. In *Nicoletti* the tapes of the intercepted conversations were kept in the footlocker in the home of a detective involved in the investigation who later delivered the locked footlocker to the district attorney. Two police officers and the district attorney had the combination to the footlocker. The district attorney and police officers reviewed the tapes at the detective's home, transcriptions were made and tapes were re-recorded. None of the tapes were ever sealed. The judge who issued the eavesdropping warrant was advised of the storage arrangements. New York's electronic surveillance statutes then in effect had provisions essentially identical to those in issue here. (N.Y. Crim. Proc. Law,[2] § 822, subd. (2) (Consol. 1993).) The Court of Appeals found the tapes inadmissible because of violation of the sealing requirement and reversed the defendants' convictions.

*Nicoletti* is readily distinguished. Here, the court from the very onset directed how the tapes were to be sealed. The tapes were sealed in accordance with the court's direction. A separate court copy was maintained in a sealed evidence bag and used for no other purposes. The only similarity between *Nicoletti* and the facts presented here is that the tapes were not presented to the judge for sealing in his presence. A subsequent New York case has ruled that sealing in the judge's presence is not required by the statute. (See *People* v. *Portanova* (1977) 56 A.D.2d 265, 268-269 [392 N.Y.S.2d 123, 127].) *Abraham* is the only case with facts similar to those in issue here.

Westbrook incorrectly contends *Abraham* has been overruled by *Ojeda Rios*. *Ojeda Rios* held that the "satisfactory explanation" requirement of 18 United States Code section 2518(8)(a) applied to a delay in sealing as well as a complete failure to seal tapes and that the "satisfactory explanation" language required the government to not only explain why a delay occurred but also why it was excusable. (*Ojeda Rios, supra,* 495 U.S. 257 at p. 262 [109 L.Ed.2d at pp. 233-234].) *Ojeda Rios* did not address the questions at issue here of whether tapes must be physically presented to a judge and actually sealed in his or her presence.

---

[2]Current version codified at New York Criminal Procedure Law section 700.50, subdivision (2) (Consol. Laws Service 1993).

The court in *Ojeda Rios* found the purpose of the sealing requirement to be to ensure the reliability and integrity of tapes and concluded Congress had viewed the sealing requirement as a limitation on the government's opportunity to alter the tapes. (*Ojeda Rios, supra,* 495 U.S. 257 at p. 263 [109 L.Ed.2d at pp. 234-235].) Here, the dissent attacks the continued viability of *Abraham* based on the *Abraham* court's reasoning the purpose of the statute was to maintain confidentiality. *Ojeda Rios* has not vitiated *Abraham*'s reasoning that the statutory language does not require sealing to be done in the judge's presence.

Section 629.14 does not require tapes to be presented to the issuing judge and sealed in his or her presence. Rather, it requires the tapes be "made available" to the judge and "sealed under his or her direction." By making the tapes available to the judge and sealing them pursuant to his or her direction the literal requirements of the statute are met. The statute does not require the judge to actually observe the tapes and participate in their sealing. As long as the procedures followed comply with the literal requirements of the statute and serve the statutory purpose as set forth in *Ojeda Rios,* we will require no more.

## IV

We next examine whether the procedures followed here complied with the literal requirements of the statute and whether they additionally served the purpose of the statute.

Judge Edwards was involved in establishing a secure method for sealing and storing the court's copy of the tapes even before the order authorizing the wiretap was issued. Pursuant to Judge Edwards's direction the court's copies of the tapes were to be immediately sealed and maintained for the court's exclusive use. At the end of each shift the agents working the shift were to remove the tapes from the machines, seal them in individual evidence bags and place them in a file cabinet in the wire room. Hook was to daily remove the sealed bags and maintain exclusive custody until he transferred them to the DEA evidence custodian who was to store the sealed bags in the DEA nondrug evidence vault. During the course of the investigation, the judge obtained assurances from Hook and Miller that sealing and storage were being conducted as he had directed.

The day after the surveillance terminated, Judge Edwards elected not to have the tapes delivered to the court for sealing in his presence. Rather, in light of the tapes having already been sealed and stored in accordance with his earlier direction, he orally ordered the DEA custodian be designated the

person responsible for storage for the 10 years required under section 629.14.

We conclude the procedure followed complied with the minimum requirements of the statute. The tapes were sealed by the agents pursuant to the court's direction. The day after surveillance concluded, the court ordered the long-term custody arrangements. In some respects the procedure followed exceeded the statutory requirements. Rather than waiting until the conclusion of the surveillance, the court directed sealing as the tapes were made. The immediacy requirement was clearly exceeded.

The real essence of Westbrook's challenge is to Judge Edwards not having the tapes brought to court for resealing in his presence but rather relying on the sealing by a government agent. As we have previously discussed, the statute does not require sealing in the judge's presence. Nor does it prohibit sealing by a government agent. Case law supports the court's actions in both those respects. (*Abraham, supra*, 541 F.2d 624; *People* v. *Portanova, supra*, 56 A.D.2d 265.)

Does such a procedure however violate the purposes of the sealing requirement to ensure the reliability and integrity of the tapes? A separate tape was made for the court and immediately sealed. When the tape left the wire room, custody rested with Hook and the evidence custodian exclusively. The custodians of the sealed tapes were aware they were under court order to maintain the tapes inviolate for the court and that they were subject to court review. The court in fact assured through Miller that the tapes were being sealed and secured as ordered. The court tapes were never used for copying or review.

It is impossible to eradicate all possibility of tampering by a government agency responsible for the surveillance operation. Where sealing is done in the court's presence at the expiration of the wiretap authorization or extensions, the tapes may be available for government "tampering" for extended periods of time before the sealing takes place. In this case the wiretap authorization was issued on January 15, 1992, and the wiretap concluded on February 26, 1992. Had the court had the tapes presented for sealing in its presence rather than having the tapes sealed at the end of each shift as was done here, some unsealed tapes would have been vulnerable to "tampering" for well over a month. Under the procedure followed here the opportunity for tampering was kept at a minimum. There is no contention the tapes have been compromised in any respect. Under these circumstances, we conclude the statutory purpose of ensuring the reliability and integrity of the tapes has been served by the procedure followed.

DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its order granting Westbrook's motion to suppress evidence for violation of section 629.14 and to issue a new order denying the motion.

Benke, J., concurred.

**WIENER, Acting P. J.,** Dissenting.—In granting Westbrook's Penal Code section 1538.5 motion to suppress the wiretaps, the court explained:

"The wiretap recordings, and all evidence derived therefrom, must be suppressed pursuant to Penal Code section 629.14. Whatever other safeguards the Legislature may have included in the statute, it adopted the federal sealing provisions. The gist of those procedures is, that once the wiretaps are completed, the tape shall come under court control and be placed under seal under the direction of the judge. The statute permits storage by others, but not the sealing function. The point of the exercise is to deny the agency access to the tapes by a sealing operation conducted under the supervision of the judge. . . . The court is bound to apply the law in accordance with its terms and suppress the evidence."

I agree with the trial court. The statutory requirement for court sealing is meaningless if the judge can merely delegate to law enforcement the job of sealing the tapes at a later time.

To a great extent the majority rests its conclusion on *United States* v. *Abraham* (6th Cir. 1976) 541 F.2d 624, which it describes as "the only case with facts similar to those in issue here." (Maj. opn., *ante*, p. 50) Although this may be literally correct, there are a number of cases from both federal and state court which fairly reflect the appellate court's understanding that the tapes must be physically presented to the authorizing judge (or at least a judicial employee) for sealing. (See, e.g., *U.S.* v. *Vastola* (3d Cir. 1990) 915 F.2d 865, 866 ["[T]he government did not immediately *present them for judicial sealing*, as required by section 2518 . . . ."]; *United States* v. *Rodriguez* (2d Cir. 1986) 786 F.2d 472, 476 ["[W]e suggested that any *presentation* made more than two days after the end of the wiretap could not be considered immediate"]; *United States* v. *Cohen* (5th Cir. 1976) 530 F.2d 43, 46 [approving a delay in sealing tapes "[a]lthough the better procedure would have been to *deliver* the tapes immediately to the judge . . . ."];[1] *State* v. *Chiarizio* (1986) 8 Conn.App. 673 [514 A.2d 370, 382] ["We agree

---

[1]*Cohen* was disapproved on other grounds in *United States* v. *Ojeda Rios* (1990) 495 U.S. 257, 265, footnote 5 [109 L.Ed.2d 224, 234-235, 110 S.Ct. 1845].

with the defendant that the statute requires that the tapes be sealed *upon receipt* by the panel's custodian"], all italics added.) Admittedly, with the possible exception of *Chiarizio*, none of these cases actually *hold* physical presentation and judicial sealing are required.

Because *Abraham* is so important to the majority's conclusion I think it essential that it be examined more closely. After reciting that nothing in the language of the federal statute or its legislative history indicates a congressional intent that the judge be present when the tapes are sealed, the *Abraham* court explains the sealing requirement "appears to be related to the purpose of maintaining confidentiality of the recordings."[2] (541 F.2d at p. 628.) The opinion goes on to conclude: "Courts have traditionally withdrawn particular records from public scrutiny by ordering them sealed to preserve confidentiality. The presence of the judge at the actual sealing would offer no additional guarantee that confidentiality would be maintained." (*Ibid.*)

As the majority notes, Westbrook argues *Abraham* was overruled by the United States Supreme Court in *United States* v. *Ojeda Rios, supra,* 495 U.S. 257. The majority correctly explains the issue in *Ojeda Rios* is different. It is nonetheless true, however, that *Ojeda Rios* firmly repudiates *Abraham's* view of the purpose of the statute: "The primary thrust of § 2518(8)(a) [citation], and a congressional purpose embodied in Title III in general [citation], is to ensure the reliability and integrity of evidence obtained by means of electronic surveillance. . . . [T]he seal is a means of ensuring that subsequent to its placement on a tape, the Government has no opportunity to tamper with, alter, or edit the conversations that have been recorded. It is clear to us that Congress viewed the sealing requirement as important precisely because it limits the Government's opportunity to alter the recordings." (*Id.* at p. 263.)

Where the purpose of the statute is to prevent alteration of the tapes by the government, that purpose is served only where the tapes are removed from prosecution custody for sealing. It is true that presealing alteration is still a possibility, but the statute also addresses that issue by requiring that the tapes be presented to the judge "immediately" following the completion of the wiretap, and the burden is on the prosecution to offer a reasonable explanation for any delay. Moreover, it may be that Congress (and inferentially the California Legislature) was more concerned with the possibility of

---

[2]The Sixth Circuit recognized that this interpretation was at odds with the decision in *United States* v. *Sklaroff* (5th Cir. 1975) 506 F.2d 837, 840, which had held that the purpose of 18 United States Code section 2518(8)(a) "is to safeguard the recordings from editing or alteration." (See 541 F.2d at p. 628.) *Sklaroff* was disapproved on other grounds in *United States* v. *Ojeda Rios, supra,* 495 U.S. at page 265, footnote 5 [109 L.Ed.2d at pages 235-236].

alteration after the nature of the defense became clear. Under the procedure followed in this case, no neutral third party was aware of when the tapes were actually sealed. This seems to me clearly contrary to the legislative intent underlying the statute.

I would therefore deny the petition.

The petition of real party in interest for review by the Supreme Court was denied July 22, 1993. Mosk, J., was of the opinion that the petition should be granted.