2014 CO 26

**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Ascencion BAEZ–LOPEZ, Defendant–Appellee.**

**The People of the State of Colorado, Plaintiff–Appellant,**

v.

**Juan Cantu–Bojorquez, Defendant–Appellee.**

**The People of the State of Colorado, Plaintiff–Appellant,**

v.

**Jose Soto–Lopez, Defendant–Appellee.**

**Supreme Court Case No. 13SA261, Supreme Court Case No. 13SA262, Supreme Court Case No. 13SA263**

Supreme Court of Colorado.

April 21, 2014

Attorneys for Petitioner: Mitchell R. Morrissey, District Attorney, Second Judicial District, Denver, Colorado, Office of the Attorney General, Katherine A. Hansen, Special Deputy District Attorney, Denver, Colorado.

Attorneys for Respondent, Ascencion Baez–Lopez: Joseph Saint–Veltri and Associates, Joseph Saint–Veltri, Robert Leveen, Attorney at Law, Robert F. Leveen, Denver, Colorado.

Attorneys for Respondent, Juan Cantu–Bojorquez: Springer and Steinberg, P.C., Harvey A. Steinberg, Ariel Z. Benjamin, Denver, Colorado.

Attorneys for Respondent, Jose Soto–Lopez: Castle & Castle, P.C., Lisabeth P. Castle, Walta LLC, Mark G. Walta, Denver, Colorado.

JUSTICE HOBBS delivered the Opinion of the Court.

¶ 1 Pursuant to C.A.R. 21, we accept jurisdiction in this original proceeding to review the trial court's order suppressing evidence from interceptions of oral and wire communications ("wiretaps") in three cases involving

an alleged conspiracy to distribute Schedule II controlled substances. The trial court suppressed the wiretap recordings on the basis that they had not been sealed in compliance with section 16–15–102(8)(a), C.R.S. (2013), and there was no satisfactory explanation for the absence of a satisfactory seal. We disagree. We hold that the trial court abused its discretion in granting the suppression motions because the sealing procedure used in these cases complied with section 16–15–102(8)(a). Accordingly, we reverse the trial court's suppression order.

## I.

¶ 2 Ascencion Baez–Lopez was indicted on two counts of violating the Colorado Organized Crime Control Act ("COCCA") and one count of conspiracy to distribute a Schedule II controlled substance. Juan Cantu–Bojorquez was indicted on two counts of violating COCCA and one count of conspiracy to distribute a Schedule II controlled substance. Jose Soto–Lopez was indicted on two counts of violating COCCA and two counts of conspiracy to distribute a Schedule II controlled substance. Communications intercepted by wiretaps on several telephones supported these charges. Chief Judge Robert Hyatt of the Denver District Court authorized the six wiretaps that produced the recordings at issue in these cases.

¶ 3 The defendants moved to suppress the contents of the wiretaps and evidence derived therefrom. The motions to suppress argued that the wiretap recordings were not sealed in compliance with section 16–15–102(8)(a).

¶ 4 The trial court held three hearings in connection with the defendants' motions to suppress the wiretap evidence. To establish that the government sealed the recordings in compliance with the statute, the prosecution introduced testimony from Detective Adam McCambridge and an affidavit from Senior Assistant Attorney General Annemarie Braun. Both McCambridge and Braun testified that the sealing procedure used to secure the wiretap evidence in these cases followed the oral instructions of Chief Judge Hyatt. The trial court allowed defense counsel to cross-examine Braun concerning the contents of the affidavit.

¶ 5 McCambridge testified that he was present at an August 23, 2012, meeting with Braun and Chief Judge Hyatt at which the judge said he wanted the recordings placed into the secure Drug Enforcement Administration ("DEA") evidence facility. McCambridge testified that he followed the judge's instructions by sealing the wiretap recordings in the following manner: he removed the discs with the master audio tracks from a secure server room, immediately initialed them, and placed them in a DEA self-sealing plastic evidence bag in the DEA evidence vault. McCambridge testified that he sealed the recordings on September 24, 2012, which was before the wiretap authorization period ended.

¶ 6 Braun's affidavit stated that during a 2009 grand jury investigation, former Chief Judge Naves directed her to have the case agent seal the discs at the conclusion of the wiretap interceptions and immediately book them into evidence. Braun also stated that Chief Judge Hyatt directed her to adopt the same procedure during a separate 2010 investigation. Further, Braun's affidavit stated that her 2009 and 2010 investigations used the same sealing procedure as the one at issue in these cases:

> I understood Chief Judge Hyatt's directions to be a standing order that has remained in effect. I continued to follow this procedure ... through subsequent wiretap investigations.... During [the investigation involving the defendants], I confirmed with Chief Judge Hyatt that he wanted the law enforcement case agent (Det. McCambridge) to comply with and follow the same procedure to seal and store the discs that had been done in previous investigations.

¶ 7 Under cross-examination by defense counsel, Braun testified that she and Chief Judge Hyatt had a number of conversations about the sealing procedure that had been instituted under former Chief Judge Naves' oversight. She testified that she inquired of Chief Judge Hyatt: "This is the procedure that we have followed. Would you like me to

continue to follow it?" and Chief Judge Hyatt answered affirmatively.

¶ 8 Defendants contended that the sealing procedure described in McCambridge and Braun's testimony does not comply with section 16–15–102(8)(a). They argued that the statute requires recordings to be delivered to the judge who authorized the wiretap and sealed by the court, a procedure which some federal courts have required. Failure to do otherwise, they argued, would cede statutory duties to law enforcement officers, contrary to section 16–15–102's purpose of imposing rigorous judicial oversight of wiretaps.

¶ 9 On September 19, 2013, the trial court ordered the wiretap evidence suppressed because "the wiretaps were not satisfactorily sealed nor is there a satisfactory explanation for the absence thereof." The trial court reasoned that there was no order in the record with Chief Judge Hyatt's sealing instructions and therefore "the record before this Court is not satisfactory to ensure that the purposes of the sealing requirements were met."

## II.

¶ 10 We hold that the trial court abused its discretion in granting the defendants' suppression motions because the sealing procedure complied with section 16–15–102(8)(a).

### A. Jurisdiction Over This Original Proceeding

¶ 11 The prosecution asserts three alternate grounds for our jurisdiction in this case. First, it cites section 16–15–102(11), C.R.S. (2013), which creates a right of interlocutory appeal to contest an order granting a motion to suppress under section 16–15–102(10). Second, it asserts section 16–12–102(2), C.R.S. (2013), which creates a right of interlocutory appeal to contest certain other suppression orders. See generally People v. Braunthal, 31 P.3d 167, 171 (Colo.2001) (explaining that C.A.R. 4.1 provides for the types of rulings appealable under section 16–12–102). Third, it requests that we exercise our jurisdiction under C.A.R. 21.

¶ 12 We accept jurisdiction under C.A.R. 21. See People v. C.V., 64 P.3d 272,

274 (Colo.2003) (electing to exercise jurisdiction pursuant to C.A.R. 21). The exercise of original jurisdiction is discretionary and can be used to review a serious abuse of discretion when there is no adequate appellate remedy. Braunthal, 31 P.3d at 172. Exercising our original jurisdiction may be appropriate where the suppression of evidence poses significant impediments to the prosecution's case, and where forcing the prosecution to wait for post-acquittal appellate relief would preclude retrial on double jeopardy grounds. Id.; People v. Smith, 254 P.3d 1158, 1161 (Colo.2011); People v. Null, 233 P.3d 670, 675 (Colo.2010); People v. Casias, 59 P.3d 853, 856 (Colo.2002).

### B. Standard of Review

¶ 13 We defer to the trial court's findings of historical fact and will not overturn those findings if they are supported by competent evidence in the record, but we review its legal determinations de novo. People v. Castaneda, 249 P.3d 1119, 1122 (Colo.2011). We review issues of statutory construction de novo, and our primary task in doing so is to give effect to the General Assembly's intent. O'Hara v. People, 271 P.3d 503, 508, 2012 CO 18, ¶ 16. The requirements of section 16–15–102 are to be interpreted in a practical and commonsense fashion to effectuate their purpose. Id.

### C. Colorado's Wiretap Statute

¶ 14 The provision of Colorado's wiretap statute that governs the sealing procedure is section 16–15–102(8)(a). It requires that recordings be sealed immediately under the direction of the judge who authorized the wiretap, but still allows the use of recordings if there is a satisfactory explanation for the absence of the required seal:

> The contents of any wire, oral, or electronic communication intercepted by any means authorized by this section shall, if possible, be recorded on tape, wire, or other comparable device. *The recording of the contents of any wire, oral, or electronic communication under this subsection (8) shall be done in such a way as will protect the recording from editing or other alterations. Immediately upon ex-*

*piration of the period of the order, or extension thereof, the recording shall be made available to the judge issuing the order and sealed under his directions. Custody of the recording shall be wherever the judge orders.* A recording shall not be destroyed except upon an order of the judge and in any event shall be kept for ten years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of this section. *The presence of the seal provided for by this subsection (8), or a satisfactory explanation for the absence thereof, is a prerequisite to the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived under this section.*

§ 16–15–102(8)(a) (emphasis added).

¶ 15 A federal statute—the Omnibus Crime Control and Safe Streets Act of 1968—allows wiretaps under certain circumstances and effectively prohibits all other wiretaps. *See United States v. Giordano,* 416 U.S. 505, 514, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). Under the act, state attorneys general and district attorneys may apply to a state court judge for a wiretap if a state statute authorizes the application. 18 U.S.C. § 2516(2). State judges may grant the application in conformity with state and federal law. *Id.*

¶ 16 By enacting section 16–15–102, Colorado's General Assembly authorized the attorney general, district attorneys, and their designees to apply for ex parte orders authorizing wiretaps. Judges of competent jurisdiction may grant applications showing probable cause that a wiretap will produce evidence of certain felonies. § 16–15–102(1). Section 16–15–102 comprehensively regulates wiretap authorization orders by requiring specific descriptions of the communications sought and limiting the duration of the authorization, among other restrictions. § 16–15–102(5)–(6).

¶ 17 Because Colorado's wiretap statute is closely patterned after and designed to implement the policies of the federal act, federal authorities explaining the federal

wiretapping statute should be accorded great weight in interpreting the Colorado statute. *O'Hara,* 271 P.3d at 511, 2012 CO, ¶ 31. Section 16–15–102(8)(a) is this state's counterpart to the federal wiretapping requirements codified at 18 U.S.C. § 2518(8)(a).

¶ 18 The Colorado statute provides that the recordings shall "be made available to the judge issuing the [wiretap authorization] order and sealed under his directions." § 16–15–102(8)(a). This provision does not require that the records be delivered to the court or sealed in the judge's presence. We agree with the Sixth Circuit that "nothing in the language of [the statute] requires the presence of the judge as the sealing of the recordings takes place." *United States v. Abraham,* 541 F.2d 624, 627 (6th Cir.1976). The history of the federal act reveals a legislative understanding that recordings would ordinarily be stored in law enforcement facilities. S.Rep. No. 90–1097, at 2193 (1968). Senate Report 90–1097 explains that "[m]ost law enforcement agency's facilities for safekeeping will be superior to the court's and the agency normally should be ordered to retain custody, but the intent of the provision is that the records should be considered confidential court records." *Id.*

¶ 19 Further, we do not interpret section 16–15–102(8)(a) to require the placement of an official seal on the recordings. Although the term "seal" has multiple meanings,[1] we conclude that the General Assembly used this term to mean "to prevent access to" when it required recordings to be "sealed" under the authorizing judge's directions. *See* § 16–15–102(8)(a). Accordingly, the statutory language regarding "[t]he presence of the seal provided for by this subsection" refers to the effective access-prevention measures the judge directs. *See also* Black's Law Dictionary (9th ed. 2009) (defining the noun "seal," in pertinent part, as "A fastening that must be broken before access can be obtained"). This interpretation best promotes the purpose of the sealing requirement: "ensuring that subsequent to

---

1. Black's Law Dictionary (9th ed. 2009) (defining the verb "seal" as "1. To authenticate or execute (a document) by use of a seal. 2. To close (an envelope, etc.) tightly; to prevent access to (a document, record, etc.).").

its placement on a tape, the Government has no opportunity to tamper with, alter, or edit the conversations that have been recorded.... Congress viewed the sealing requirement as important precisely because it limits the Government's opportunity to alter the recordings." *United States v. Ojeda Rios*, 495 U.S. 257, 263, 110 S.Ct. 1845, 109 L.Ed.2d 224 (1990) (examining the admissibility of wiretap evidence where the government did not immediately seal recordings upon the expiration of the wiretap authorization, in violation of the federal statutory sealing requirement). In summary, the statute requires immediate sealing under the authorizing judge's direction to prevent tampering, but does not require the judge's physical involvement or any specific manner of sealing.

¶ 20 While section 16–15–102(8)(a) requires that recordings be sealed according to a judge's "directions," the statute's plain language does not limit the form of a judge's sealing directions. That is, there is no statutory requirement that the judge's directions be delivered in written form, although this is the best practice to avoid later disputes. Our reading of section 16–15–102(8)(a) is consistent with the federal case law, which has allowed the introduction of recordings absent written sealing directions or orders. For instance, the Fourth Circuit has examined compliance with a judge's oral sealing directions, noting that it "attach[es] no significance to the fact that the order was given orally, although the record reflects that the district judge's past practice (better, as the district court acknowledged) had been to issue such orders in writing." *United States v. Diana*, 605 F.2d 1307, 1311 n. 2 (4th Cir. 1979); *see also United States v. Gigante*, 538 F.2d 502, 507 (2d Cir.1976) ("While we agree that it might be better practice for the issuing judge to sign a formal order directing the sealing and custody of the tapes, and to maintain a record of that proceeding, such procedures are not required by § 2518(8)(a).").

■ ¶ 21 In order to determine whether the statutory requirements have been met in any given case, the record made at the motions hearing must contain evidence of the judge's wiretap sealing directions. Absent a written order, the prosecution can introduce other evidence to establish the content of the judge's directions. *See, e.g., Diana*, 605 F.2d at 1311 (reviewing compliance with oral directions, where the prosecution established the content of the judge's directions through the judge's own testimony); *People v. Superior Court (Westbrook)*, 15 Cal.App.4th 41, 18 Cal.Rptr.2d 617, 621 (1993) (holding that California's counterpart to 18 U.S.C. § 2518(8)(a) does not require sealing directions in written orders, where the authorizing judge submitted a declaration describing his oral sealing directions).

¶ 22 In *O'Hara*, we recognized that there are multiple ways that the prosecution can establish that the wiretap application met the statute's "personal authorization" requirement. 271 P.3d at 506, 2012 CO, ¶ 5. We held that applications containing the signature of the elected official are presumed to be properly authorized—but if an application lacks the official's signature, the prosecution may show compliance through the sworn testimony or affidavit of the elected official or similar proof. *Id.* Likewise, section 16–15–102(8)(a) does not require a judge's sealing directions to be memorialized in any particular way, and the prosecution may present alternate forms of proof when the judge's directions are not set out in written directions or orders.

¶ 23 When wiretap recordings are not immediately sealed under the judge's direction, the recordings are inadmissible absent a "satisfactory explanation" for failing to comply with the statutory sealing requirements. § 16–15–102(8)(a). This rule applies whenever a seal does not comply with section 16–15–102(8)(a), not just when a seal is entirely absent. *See Ojeda Rios*, 495 U.S. at 263, 110 S.Ct. 1845. A "satisfactory explanation" requires the People to explain both the cause of the noncompliance and "why it is excusable." *Id.* at 265, 110 S.Ct. 1845.

### D. Application to this Case

■ ¶ 24 As stated above, section 16–15–102(8)(a) requires that "the recording shall be ... sealed under [the authorizing judge's] directions." We conclude that the recordings

at issue in this case were sealed in compliance with the statute.

¶ 25 According to the uncontroverted testimony of McCambridge, the wiretap recordings were sealed as follows: the master discs were removed from the computers in the server room, immediately initialed, placed in a plastic case in a DEA self-sealing plastic evidence bag, and then placed in the DEA evidence vault. This process falls within the meaning of the term "seal" as it applies here, which is "to prevent access to" a recording. *See* Black's Law Dictionary (9th ed. 2009). Braun's affidavit and testimony and McCambridge's testimony provided uncontroverted evidence that Chief Judge Hyatt had approved this procedure.

¶ 26 The trial court granted the defendants' motions to suppress, reasoning in part that the record did not demonstrate compliance with the sealing requirements because the trial court "did not even have an order as a part of the record that would authorize sealing or set forth any procedure to follow for a sealing process." But the statute does not require a written order. Evidence of the judge's oral directions can be sufficient.

¶ 27 We disagree with the defendants' arguments that *United States v. Gomez* should control in this case. In *Gomez*, the court concluded that wiretap recordings were improperly sealed in a box in a police department evidence room, where the record did not "reflect that the state court ordered custody of the tapes to be maintained" there. 67 F.3d 1515, 1524 (10th Cir.1995) (applying Utah's counterpart to section 16–15–102(8)(a)). In Gomez, contrary to this case, there was no evidence that the authorizing judge issued any directions about the sealing and storage of the recordings. *See id.*

¶ 28 The trial court erroneously concluded that there was insufficient evidence in the record to demonstrate compliance with the statute. Based on the uncontested facts regarding how the sealing occurred in these cases, we conclude that the recordings were physically sealed and preserved in a manner consistent with section 16–15–102(8)(a).

### III.

¶ 29 Accordingly, we reverse the trial court's suppression order and remand these cases to the trial court for further proceedings consistent with this opinion.